James E. McCALL

v.

C. L. SWAIN, Superintendent, Lorton
Reformatory, et al., Appellants.

No. 73–2013.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 12, 1974.

Decided March 20, 1975.

David P. Sutton, Asst. Corp. Counsel for the District of Columbia, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellants.

Laurence Sarezky,* with whom Ricardo M. Urbina, Washington, D. C., was on the brief, for appellee.

Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.

Before MOORE,** Senior Circuit Judge, and WRIGHT and ROBB, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:

██ We must decide today whether, under the District of Columbia Court Reform and Criminal Procedure Act of 1970,[1] the United States District Court for the District of Columbia or the Superior Court of the District of Columbia has *habeas corpus* jurisdiction over an individual sentenced for local crimes by the District Court, when the *habeas* petition challenges the constitutionality of a local prison's administrative decision to transfer the petitioner to maximum security confinement.[2] We affirm Judge

---

* Entered an appearance as student counsel pursuant to Rule 20 of the General Rules of this court.

** Of the Second Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

1. 84 Stat. 473 et seq. (hereinafter cited as "the Court Reform Act").

2. In many situations a challenge to prison conditions may be brought as either a civil rights action under 42 U.S.C. § 1983 (1970),

Gesell's ruling that *habeas corpus* jurisdiction over such cases is exclusively vested[3] in the District Court.

### I

Appellee McCall is confined at the Lorton Correctional Complex, an integral part of the District of Columbia correctional system[4] which, by a special Act of Congress,[5] was constructed outside the District in northwestern Virginia. Convicted of and sentenced for armed robbery and assault with a dangerous weapon by the United States District Court for the District of Columbia,[6] appellee was committed to the custody of the Attorney General who, pursuant to 24 D.C. Code § 425 (1973), designated Lorton as the appropriate facility in which the sentence was to be served.[7]

or a suit under the Constitution, a *habeas* petition. *See, e. g.,* Preiser v. Rodriguez, 411 U.S. 475, 498–500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). *See also, e. g.,* Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (*pro se* complaint under § 1983 seeking damages for alleged physical injuries and deprivation of rights in transferring prisoner to solitary confinement should not have been dismissed without affording him opportunity to offer supporting evidence on his claims). We do not address the question whether appellee could have brought this proceeding as a constitutional suit under 28 U.S.C. § 1331. *Cf. generally* Preiser v. Rodriguez, *supra*; District of Columbia v. Carter, 409 U.S. 418, 432–433, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). To the extent such a suit would have been proper, there would be no question that appellee could bring his action in District Court rather than in Superior Court. *See, e. g.,* Preiser v. Rodriguez, *supra*, 411 U.S. at 477, 93 S.Ct. 1827; Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); McNeese v. Board of Education, 373 U.S. 668, 671, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963).

**3.** The relevant *habeas* statute, 16 D.C.Code, § 1901 (1973), *see infra*, 166 U.S.App. D.C. at ——, 510 F.2d at 172, is mandatory, directing that certain *habeas* petitions "shall" be filed in District Court, while others "shall" be filed in Superior Court. Thus *habeas* jurisdiction within the District of Columbia is exclusively vested in one court or the other. We do not address the question whether other courts located outside this jurisdiction would also have *habeas* jurisdiction over these matters, or whether they would be preferable forums in some situations. *See, e. g.,* Wright v. Jackson, 4 Cir., 505 F.2d 1229 (1974). Nor do we address the question whether petitioners who must initially file in Superior Court may file a petition in District Court after exhausting available local remedies. That issue will be decided by this court *en banc* in the consolidated cases Palmore v. Superior Court, No. 74–1832, and Pressley v. Swain, No. 73–1975, set for oral argument on April 24, 1975.

**4.** The District of Columbia Department of Corrections is charged with management and regulation of the Lorton Reformatory and the Occoquan Workhouse, both located in Virginia, and the Washington Asylum and Jail, located within the geographical limits of the District. The Department is rendered responsible for the "safekeeping, care, protection, instruction, and discipline of all persons committed to such institutions." 24 D.C.Code § 442 (1973).

**5.** Act of March 3, 1909, 35 Stat. 717.

**6.** Appellee was convicted by the District Court in May 1970 and was sentenced by Judge Pratt in June of that year. His conviction was affirmed by this court in United States v. McCall, 148 U.S.App.D.C. 444, 460 F.2d 952 (1972). Subsequent to that affirmance and after enactment of the Court Reform Act, Judge Pratt granted a motion reducing appellee's sentence for armed robbery from eight to 24 years to five to 15 years.

The armed robbery and assault with a dangerous weapon convictions were based on violations of the D.C. Criminal Code. *See* 22 D.C.Code §§ 2901 (robbery), 3202 (committing crime while armed), & 502 (a/d/w) (1973). Appellee was also convicted of the local offense of carrying a concealed weapon, 22 D.C. Code § 3204 (1973), and the federal offense of possession of an unregistered firearm, 26 U.S.C. § 5861(d) (1970). His sentences of one to three years on the former and one year on the latter count, which were to be served concurrently with his sentences for armed robbery and assault with a dangerous weapon, have already been completed. Although the fact that appellee was charged with and convicted of a federal offense strengthens the case for finding *habeas* jurisdiction in the District Court, both Judge Gesell and the parties to this case have treated the petition as if appellee were convicted solely of D.C.Code offenses. In light of the fact that the sentence under 26 U.S.C. § 5861(d) has already run, as well as the desirability of clarifying the jurisdiction of the District and Superior Courts with respect to individuals sentenced for local crimes by the District Court, we also treat appellee as if he were convicted and incarcerated purely on the basis of violations of local criminal law.

**7.** 24 D.C.Code § 425 (1973) provides:

All prisoners convicted in the District of Columbia for any offense * * * shall be committed, for their terms of imprisonment, and to such types of institutions as

Following appellee's alleged failure to report to his assigned place of duty at Lorton Reformatory's Industrial Workhouse for an early morning prisoner count, he was granted a hearing before the prison Disciplinary Committee, which ordered him transferred to maximum security confinement for at least 45 days as punishment for his "lack of cooperation." Having exhausted all available internal prison remedies, appellee, who claimed the hearing failed to comport with minimal due process standards, petitioned the District Court for a writ of *habeas corpus* and an order transferring him back to the general prison complex.

Ordered to show cause why the requested writ of *habeas corpus* should not issue, appellants—the Director of the District of Columbia Department of Corrections and the Superintendent of Lorton Reformatory—asserted that except in extreme situations courts should not interfere with internal prison regulations and their enforcement, and that as a proper exercise of prison discipline, the actions taken against appellee were in no way violative of his constitutional rights. On July 16, 1973, at a hearing held by Judge Gesell to consider the merits of the petition, appellants also challenged the District Court's jurisdiction to entertain the petition, since 16 D.C.Code § 1901(c) (1973) specifies that petitions directed to persons other than federal officers and employees must be filed in the Superior Court rather than in the District Court.[8]

Although Judge Gesell did not believe that failure to join the Attorney General, to whose custody appellee had been committed upon sentencing, affected the outcome of the jurisdictional issue, he ordered the petition amended and the Attorney General joined as a party to the action.[9] After considering the arguments on the jurisdictional question, Judge Gesell rendered an oral opinion holding that the District Court did have jurisdiction to entertain appellee's petition:

> [T]he Court feels that any defendant committed by this Court to the Attorney General is at all times under the custody and control and responsibility of the Attorney General and that in the event the Defendant is mistreated or denied rights which he has habeas corpus lies to a Federal Court to protect Federal prisoners. It is on that basis that I propose to proceed, the Attorney General having been brought into these proceedings which were initially simply against the state authorities. I do that in part because of a very definite feeling that Federal Courts must have a continuing interest and responsibility for defendants that are committed under its [*sic*] aegis to penitentiaries or jails. I do it also because this Court's efforts to bring about reforms within the D. C. Correc-

---

the court may direct, to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinements where the sentences of all such persons shall be served. The Attorney General may designate any available, suitable, and appropriate institutions, whether maintained by the District of Columbia Government, the federal government, or otherwise, or whether within or without the District of Columbia. The Attorney General is also authorized to order the transfer of any such person from one institution to another if, in his judgment, it shall be for the well-being of the prisoner or relieve overcrowding or unsuch prisoner is confined, or for other reasons.

Pursuant to 24 D.C.Code § 468 (1973), the Attorney General has in turn authorized the

Board of Commissioners of the District of Columbia or its authorized representative (the Director of the District of Columbia Department of Corrections)

> to transfer such prisoners as may be in their custody and supervision, by virtue of having been placed in a correctional institution of the District of Columbia by the Attorney General, from such institution to any available, suitable, or appropriate institution or facility * * * within the District of Columbia[.]

28 C.F.R. ch. I, pt. O, App. to Subpart Q (1974). *See also infra*, 166 U.S.App.D.C. at ——, 510 F.2d at 181–182.

**8.** *See infra*, 166 U.S.App.D.C. at ——, 510 F.2d at 172.

**9.** *See* Joint Appendix at 24.

tional System have been extraordinarily ineffective and I have no reason to believe that the Superior Court will have any greater success than did this Court in attempting to improve correctional conditions within the D. C. Correctional Department.

\* \* \* \* \* \*

\* \* \* I think that this Court has an inherent power to act with respect to prisoners who have been committed by this Court.[10]

Judge Gesell then sustained appellee's petition on the merits and ordered that he be immediately released from maximum security confinement and returned to the general prison population. This appeal, based solely on the jurisdictional aspects of the order, followed.

## II

When Congress enacted the District of Columbia Court Reform and Criminal Procedure Act of 1970, 84 Stat. 473 et seq., it accorded the Superior Court of the District of Columbia jurisdiction "relating to writs of habeas corpus directed to persons other than Federal officers and employees." 11 D.C.Code § 921(a)(3)(A)(iii) (1973). More specifically, 16 D.C.Code § 1901 (1973) now provides that

(a) A person *committed, detained, confined, or restrained from his lawful liberty within the District*, under any color or pretense whatever, or a person in his behalf, may apply by petition to the appropriate court, or a judge thereof, for a writ of habeas corpus, to the end that the cause of the commitment, detainer, confinement, or restraint may be inquired into. \* \* \*

(b) Petitions for writs *directed to Federal officers and employees* shall be filed in the United States District Court for the District of Columbia.

(c) Petitions for writs *directed to any other person* shall be filed in the Superior Court of the District of Columbia.
(Emphasis added.)

 Although the issue addressed by the trial court, and the main issue presented to us on this appeal, is whether the *habeas corpus* petition was directed against "Federal officers and employees" within the meaning of 16 D.C. Code § 1901(b), we feel constrained to first address the issue whether *either* the District Court or the Superior Court has jurisdiction over this petition, since Section 1901(a) appears to premise jurisdiction on petitioner's being "committed, detained, confined, or restrained \* \* *within the District*," and the District of Columbia Court of Appeals has construed that section literally to require petitioner's confinement within the District's territorial boundaries.[11] *See* I. B. v. District of Columbia Dept. of Human Resources, Social Services Admin., D.C. Ct.App., 287 A.2d 827, 828–829 (1972). Noting the language of Section 1901 and citing Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948), the *I. B.* court reached its conclusion on the premise that "the Supreme Court has required that the jurisdictional prerequisites imposed on habeas corpus be con-

---

**10.** *Id.* at 35–36 (oral opinion filed July 17, 1974).

**11.** One approach to interpreting this statute would assert that since any individual convicted by the District Court or the Superior Court was "committed" within the District of Columbia, § 1901(a) is on its face no bar to the petition in the instant case. However, § 1901 appears to indicate that the petition filed in a court within the District must relate to a restraint occurring within the District, since the statute literally authorizes the individual "committed, detained, confined, or restrained \* \* \* within the District" to apply for a petition challenging "the cause of

the commitment, detainer, confinement, or restraint." This requirement was even clearer in earlier versions of § 1901, which refer to challenging the cause of "*such* commitment, detainer, confinement, or restraint." *See infra*, 166 U.S.App.D.C. at ——, 510 · F.2d at 173–174. In any event, we decline to read the statute too literally, and on the view of the statute we elaborate in text we find the presence of the custodian of the petitioner within the territorial jurisdiction of the District to be sufficient to satisfy the "restrained \* \* \* within the District" language of the statute. *See generally infra*, 166 U.S.App.D.C. at ——, 510 F.2d at 177.

strued literally." 287 A.2d at 828.[12] Although the Court Reform Act rendered the District of Columbia Court of Appeals the "highest court of the District of Columbia," 11 D.C.Code § 102 (1973), and although we should accord the "greatest deference [to its] decisions," see M.A.S., Inc. v. Van Curler Broadcasting Corp., D.D.C., 357 F.Supp. 686, 690 (1973), we do not believe such deference is appropriate in construing a statute relating to our own jurisdiction, see, e. g., Holly v. United States, 150 U.S.App.D.C. 287, 290, 464 F.2d 796, 799 (1972) (deference not accorded to DCCA where this court had jurisdiction to resolve criminal appeals on merits and statutory construction involved constitutional considerations), particularly when subsequent developments have indicated that the *I. B.* court's reliance on *Ahrens* is no longer valid.[13] See also Fitzgerald v. Sigler, D.D.C., 372 F.Supp. 889, 895–896 (1974), appeal pending, sub nom. Byrd v. Sigler, D.C.Cir. No. 74–1517.

16 D.C.Code § 1901 was first enacted in 1901 as 16 D.C.Code § 801. See Act of March 3, 1901, ch. 854, § 1143, 31 Stat. 1372. It originally provided:

> Any person committed, detained, confined, or restrained from his lawful liberty within the District * * * may apply by petition to the supreme court of the District, or any justice thereof, for a writ of habeas corpus, to the end that the cause of such commitment, detainer, confinement, or restraint may be inquired into * * .[14]

---

12. In *I. B.* juvenile appellants sought reversal of the Superior Court's dismissal of their *habeas* petitions challenging the procedures by which it was determined that they were children in need of treatment (CINS) under 16 D.C.Code § 2301(8) (1973). Four of the appellants were concurrently confined outside the territorial jurisdiction of the Superior Court at the District's Maple Glen CINS facility at Laurel, Maryland or at a Maryland home. In holding that the Superior Court was therefore without jurisdiction to entertain their *habeas* petitions, the District of Columbia Court of Appeals noted that such a decision did not render the appellants remediless since they could, *inter alia,* seek *habeas* relief under the general federal *habeas* provisions, 28 U.S.C. § 2241 et seq. (1970). See 287 A.2d at 829; *infra,* 166 U.S.App.D.C. at ——, 510 F.2d at 175 & note 18. See also Brown v. Yeldell, 159 U.S.App.D.C. 339, 487 F.2d 1210 (1973) (further proceedings by two of the *I. B.* appellants). Although we agree that 16 D.C.Code § 1901 does not preclude the District Court here from entertaining any *habeas* petitions which other federal District Courts may entertain under 28 U.S.C. § 2241 (1970), see *infra,* 166 U.S.App.D.C. at —— ——, 510 F.2d at 176–177, we have serious doubts as to the propriety of the belief of the District of Columbia Court of Appeals that the Superior Court cannot entertain *habeas* petitions from individuals sentenced in the local court system but confined in institutions maintained by the District of Columbia Department of Corrections in neighboring states. See note 13 *infra.* Cf. *generally* *infra,* 166 U.S. App.D.C. at —— —— ——, 510 F.2d at 173–177.

13. If the *I. B.* court's holding were valid, and 16 D.C.Code § 1901 could only provide a jurisdictional base when a *habeas* petitioner was actually physically confined within the District, there would be no question as to the District Court's jurisdiction in this case under 28 U.S.C. § 2241, see *infra,* 166 U.S. App.D.C. at —— ——, 510 F.2d at 182, since questions of comity and the proper relationship between the local and federal courts within the District of Columbia would not even be implicated, see *infra,* 166 U.S.App.D.C. at —— —— ——, 510 F.2d at 180–181, and could thus form no basis for deferring to the local court system in the supervision of prisoners incarcerated within its correctional system. However, we premise our holding that the District Court had exclusive jurisdiction over the *habeas* petition in this case on the assumption that the Superior Court in fact has *habeas* jurisdiction over petitions filed by inmates of Lorton in proper circumstances, such as would be the case if appellant had been convicted and sentenced by the Superior Court. We doubt Congress intended to deprive that court of jurisdiction over post-conviction treatment of individuals incarcerated under its auspices. Cf. *infra,* —— U.S.App.D.C. pp. —— —— ——, 510 F.2d pp. 183–185.

14. The Supreme Court of the District of Columbia became the United States District Court for the District of Columbia. See Act of June 25, 1936, ch. 804, 49 Stat. 1921. The District of Columbia *habeas* provision was not materially altered until the Court Reform Act divided the jurisdiction it accords between local and federal courts within the District.

Despite the "within the District" language, early decisions by this court recognized the right of a *habeas corpus* petitioner to challenge matters relating to the day-to-day operation of a correctional institution located outside the District but operated under the supervisory control of the District's Department of Corrections. *See, e. g.,* Burns v. Welch, 81 U.S.App. D.C. 384, 385, 159 F.2d 29, 30 (1947) (inmate at Lorton Reformatory) (dictim);[15] Sanders v. Bennett, 80 U.S.App.D.C. 32, 33, 148 F.2d 19, 20 (1945) ("Since the rule is a practical one based on common sense administration of justice we have held that the

courts in the District of Columbia may issue writs of habeas corpus directed to those in direct charge of penal institutions of the District which happen to be located just outside its borders. This is because *it is the plain duty of the District to adjudicate matters arising out of the conduct of its own institutions.*") (emphasis added; footnote omitted);[16] *cf.* Sanders v. Allen, 69 App.D.C. 307, 308–309, 100 F.2d 717, 718–719 (1938) (challenge by inmate of District Workhouse at Occoquan, Virginia to procedural fairness of trial held in District).[17] *See also, e. g.,* Ex parte Flick, D.D.C., 76 F.Supp. 979, 981 (1948) (dictum), affirmed, sub nom. Flick v. Johnson, 85

15. [P]etitions for habeas corpus by inmates of the District Workhouse at Occoquan, Virginia, are within the jurisdiction of the local United States District Court, for the reason that the Workhouse belongs to and is managed by the District of Columbia. Problems concerning local institutions, such as the Workhouse, and its inmates, are local problems, sui generis, and outside the usual federal procedure in regard to such matters [which requires the territorial presence of the petitioner]. Accordingly, it may be regarded as settled that the local court has jurisdiction of habeas corpus proceedings filed by inmates of the Workhouse, despite the fact that the institution is not within the District of Columbia. The same considerations apply with respect to the District of Columbia Reformatory at Lorton, Virginia.

81 U.S.App.D.C. at 385, 159 F.2d at 30. However, since the respondent named in the petition, the superintendent of Lorton Reformatory, had neither a home nor an office within the District of Columbia, and thus could not be reached by process of the District Court, this court affirmed the dismissal of the petition without prejudice to its being refiled naming a respondent within the territorial jurisdiction of the District Court. *Id.*

16. Although the *Bennett* court upheld the District Court's *habeas* jurisdiction over the superintendent of a District of Columbia penitentiary located outside the District, it found that the Attorney General was not a proper party to the action:

By statute all persons convicted of an offense against the United States are committed to the custody of the Attorney General who designates their places of confinement. But the Attorney General is not the person directly responsible for the operation of our federal penitentiaries. He is a supervising official rather than a jailer.

For that reason, the proper person to be served in the ordinary case is the warden of the penitentiary in which the prisoner is confined rather than an official in Washington, D. C., who supervises the warden. An interpretation which would permit resort to the courts in the District of Columbia for writs of habeas corpus by prisoners in federal institutions all over the United States is without justification either in convenience or logic. For that reason, only courts having jurisdiction over the warden of a penitentiary can grant a writ of habeas corpus on behalf of any of its inmates.

80 U.S.App.D.C. at 33, 148 F.2d at 20 (footnotes omitted). *But see* note 33 *infra.*

17. [W]hen a prisoner is committed to Occoquan, on conviction of an offense against the laws or ordinances of the District, he is confined in an institution of and belonging to the District, under the administration of District officials, and is governed while there by the provisions of the District Code. Counsel for petitioner properly describe this situation as sui generis and as in no way analogous to sentence and confinement of a prisoner convicted of a violation of a United States statute in one of the other Federal District Courts, sitting in one of the States [which requires the petitioner's confinement within the court's territorial jurisdiction]. In other words, the problem here is local and has no relation to federal procedure generally.

In the circumstances, we think the court below had jurisdiction to issue the writ, for petitioner was committed by a court of the District to a jail of the District under the control of an official of the District who in turn was personally within the District and within the jurisdiction of the court. * *

69 App.D.C. at 309, 100 F.2d at 719.

U.S.App.D.C. 70, 174 F.2d 983, cert. denied, 338 U.S. 879, 70 S.Ct. 158, 94 L.Ed. 539 (1949) (although District Court may entertain petitions from prisoners confined at Occoquan Workhouse or Lorton Reformatory because "these two institutions are part of the local District of Columbia penal system and are owned by the District of Columbia," general rule requiring petitioner's presence within territorial jurisdiction of court precludes entertainment of petition from individual incarcerated in Nuremburg, Germany). These cases were, however, effectively overruled by Ahrens v. Clark, *supra,* and McAffee v. Clemmer, 84 U.S. App.D.C. 57, 57–58, 171 F.2d 131, 131–132 (1948) ("those holdings [finding jurisdiction in the District Court over *habeas corpus* petitions filed by inmates of Lorton Reformatory and Occoquan Workhouse] are overruled by the Ahrens case").

In *Ahrens* the Supreme Court held that the *habeas corpus* petitioner's presence within a federal District Court's territorial jurisdiction is a prerequisite to the court's jurisdiction over the petition. Petitioners in that case were 120 Germans being held at Ellis Island, New York for deportation to Germany. They filed their petitions, however, in the United States District Court for the District of Columbia. It is significant that in holding the District Court to be without jurisdiction over petitions filed by individuals confined or restrained outside the territorial jurisdiction of the court, the Supreme Court relied exclusively on the language of the predecessor to 28 U.S.C. § 2441 (1970), the general *habeas corpus* jurisdictional statute for federal courts, which provided that "[t]he several justices of the Supreme Court and the several judges of the circuit courts of appeal and of the district courts, *within their respective jurisdictions,* shall have power to grant writs of habeas corpus for the purpose of an inquiry into the cause of restraint of liberty."[18] Indeed, the opinion did not even mention the "within the District" language of 16 D.C. Code § 1901, which arguably would have been an easier statute under which to find a territorial limitation on the District Court's jurisdiction.[19]

■ *Ahrens* has since been substantially modified [20] by the Supreme Court's

18. 28 U.S.C. § 452 (1940) (emphasis added), as amended, 28 U.S.C. § 2241 (1970). The language of § 2241 parallels that of former § 452:

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. * *

19. Nor did Justice Rutledge, dissenting for himself and Justices Black and Murphy, consider that 16 D.C.Code § 1901 placed any different jurisdictional requirement on the District Court here than on other federal District Courts, although he approvingly noted the doctrine enunciated in the Sanders v. Bennett line of cases, *see generally* 335 U.S. at 207–208 & n. 24, 68 S.Ct. 1443, which reflected the fact that "the District has a peculiar interest that its courts shall have power in such cases * * * affecting its penal institutions located outside its borders." *Id.* at 207, 68 S.Ct. at 1454. Justice Rutledge's dissent compellingly presented the view that the Court eventually adopted in its recent decision in Braden v. 30th Judicial Court of Kentucky, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973).

20. Justice Rehnquist, dissenting for himself, the Chief Justice, and Justice Powell, asserted that *Braden* overruled *Ahrens, see* 410 U.S. at 502, 509–511, 93 S.Ct. 1123, and that accusation would appear to be well taken. The *Braden* majority, however, recast the *Ahrens* decision by arguing it was proper on its facts, but improper as a rigid jurisdictional rule:

> Our decision in *Ahrens* rested on the view that Congress' paramount concern was the risk and expense attendant to the "production of prisoners from remote sections, perhaps thousands of miles from the District Court that issued the writ. The opportunities for escape afforded by travel, the cost of transportation, the administrative burden of such an undertaking negate such a purpose." 335 U.S., at 191 [68 S.Ct. 1443, at 1444]. And we found support for that assumption in the legislative history of the Act. * * *
>
> * * * * * *
>
> * * * On the facts of *Ahrens* itself, for example, petitioners could have challenged their detention by bringing an action in the Eastern District of New York against the federal officials who confined them in that district. No reason is apparent why the District of Columbia would have been a more convenient forum, or why the Government should have undertaken the burden of transporting 120 detainees to a

decision in Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). Again construing the "within their respective jurisdictions" language of 28 U.S.C. § 2241(a) (1970), the *Braden* Court held that "[s]o long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' requiring that the prisoner be brought before the court for a hearing on his claim * * * even if the prisoner himself is confined outside the court's territorial jurisdiction." 410 U.S. at 495, 93 S.Ct. at 1130.[21] "[W]e can no longer view [*Ahrens*] as establishing an inflexible jurisdictional rule." *Id.* at 499–500, 93 S.Ct. at 1132. Venue considerations rather than an arbitrary jurisdictional obstacle would thereafter be employed to serve the policies which underlay the *Ahrens* decision.[22]

The *Braden* rule, which involves a balancing of interests "[i]n terms of tradi-

tional venue considerations" and which looks to the "most desirable forum for the adjudication of the [*habeas*] claim," *see* 410 U.S. at 493, 93 S.Ct. at 1129, has been adopted by this court. *See, e. g.,* Eisel v. Secretary of the Army, 155 U.S. App.D.C. 366, 477 F.2d 1251 (1973) (determination of proper *habeas* forum for proceedings brought by commissioned inactive armed forces reservists seeking to obtain discharge as conscientious objectors). *See also* Reese v. United States Board of Parole, 162 U.S.App.D.C. 156, 158, 498 F.2d 698, 700 (1974) (*habeas* jurisdiction under 28 U.S.C. § 2241 lies within Arizona, where appellant was incarcerated, and District of Columbia, the judicial district where the custodian of the confinement was present; case remanded to District Court with instructions to transfer petition to United States District Court for the District of Arizona, a more convenient forum).[23] Yet none of the post-*Braden*

hearing in the District of Columbia. Under these circumstances, traditional principles of venue would have mandated the bringing of the action in the Eastern District of New York, rather than the District of Columbia. Ahrens v. Clark stands for no broader proposition.

410 U.S. at 496, 500, 93 S.Ct. at 1130 (footnote omitted). Needless to say, traditional venue considerations would normally dictate that the claims of individuals convicted by courts within the District but sentenced to correctional institutions maintained by District officials outside the territorial jurisdiction of the District should be brought before courts within the District. *See, e. g.* Wright v. Jackson, *supra* note 3 (class action for injunctive relief concerning Lorton disciplinary proceedings remanded for transfer to "more appropriate forum" of District Court for the District of Columbia). *See also, e. g.,* Preiser v. Rodriguez, *supra* note 2, 411 U.S. at 492, 93 S.Ct. 1827 ("intimate" relationship between prisoners and officers who supervise them indicates that litigation affecting internal prison problems should be resolved by jurisdiction controlling prison); Young v. Director, United States Bureau of Prisons, 125 U.S.App.D.C. 105, 107 & n. 8, 367 F.2d 331, 333 & n. 8 (1966) (dictum) ("because of its unique relationship to the District of Columbia," inmates of Lorton should probably be permitted to file declaratory injunction actions against Board of Parole within District, and these need not be transferred to judicial district of prisoner's

incarceration); notes 15, 17, 19 *supra*; notes 23, 33 *infra*.

21. The Court noted that the "writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody," 410 U.S. at 494–495, 93 S.Ct. at 1129, and that it therefore is reasonable to hold that a court has *jurisdiction* whenever it can serve process on the custodian, even when *venue* considerations indicate that the case should be transferred elsewhere. Similar reasoning underlies our interpretation of 16 D.C. Code § 1901. *See infra,* 166 U.S.App. D.C. at —— – ——, 510 F.2d at 177.

22. *See* note 20 *supra*.

23. The Solicitor General apparently also believes that 16 D.C.Code § 1901 does not impose on the District Court here jurisdictional criteria different from those imposed on other federal District Courts. In response to a petition for a writ of *certiorari* filed by the same *habeas* petitioner as was involved in the *Reese* case, he conceded:

The decision of the court below [in *Reese*], denying for lack of jurisdiction petitioner's motion to appeal in *forma pauperis*, is at odds with [*Braden*], which held that jurisdiction under 28 U.S.C. 2241 lies with the district of confinement and the district where the custodian of the confinement is present.

cases have considered the language of 16 D.C.Code § 1901 to be more restrictive than the language of 28 U.S.C. § 2241. Indeed, 16 D.C.Code § 1909 (1973) explicitly provides that "[t]his chapter [on *habeas corpus* within the District] does not affect any provision of chapter 153 of Title 28, United States Code [the federal *habeas corpus* chapter which includes. 28 U.S.C. § 2241]." The revision notes to Section 1909 clarify the congressional purpose in enacting it in 1964:

> Section is new, and is inserted for the purpose of construction.
>
> *Chapter 153 of Title 28,* United States Code, also relates to habeas corpus and *applies to Federal courts generally, including the United States District Court for the District of Columbia.* Upon the reenactment of the provisions carried into this chapter, they will constitute a later enactment than Title 28, United States Code, which was enacted in 1948. Considering the local character of the provisions carried into this chapter, there should not arise, as a general rule, even without this section, any question of conflict. However, this section is inserted as a precautionary measure.[24]

■■ It is therefore evident that Section 1901 does not restrict the jurisdiction of the District Court here in any way in which a federal District Court located elsewhere is not restricted. At most, Section 1901 is an additional jurisdictional statute relating to particular local problems and its "within the District" language should be construed *in*

*pari materia* with the "within their respective jurisdictions" language of 28 U.S.C. § 2241.[25] Thus, since 28 U.S.C. § 2241 has been interpreted by *Braden* and *Eisel* to allow federal District Courts with jurisdiction over the custodian to entertain *habeas* petitions from prisoners who are not physically confined within the territorial jurisdiction of the court, we hold that the phrase "within the District" does not prohibit a court—whether the District Court or the Superior Court—located in the District from entertaining *habeas corpus* petitions from individuals confined within the District's correctional facilities located outside the District limits. In effect the *Braden* decision has resurrected the Sanders v. Bennett line of cases,[26] and in light of the close nexus between the District and the correctional facilities it operates, traditional venue considerations indicate that this is the most appropriate jurisdiction in which to litigate those claims.

### III

■ Having determined that a court within the District may entertain appellee's *habeas* petition, we must address the issue decided by District Judge Gesell: does the Superior Court or the District Court have exclusive jurisdiction over a *habeas* petition filed within the District by a person serving a District Court sentence for local crimes, when the petition challenges the legality of the local prison's administrative decision to transfer the petitioner to maximum security confinement. Since there is no pertinent legislative history disclosing

---

> Here, since the warrant-detainer was issued by the United States Board of Parole in Washington, D. C. and since, in the case of a detainer, the custodian is the party who issued the detainer, we believe that the court below was not without jurisdiction to consider petitioner's motion to appeal in *forma pauperis.*[1]
>
> 1. Under the rule laid down in Young v. Director, U.S. Bureau of Prisons, [125 U.S.App.D.C. 105] 367 F.2d 331 (C.A.D. C.), it would, however, be appropriate for the court below to transfer the petition to the court for the district in which petitioner is incarcerated, since no compelling

reason for considering the petition in the District of Columbia is evident. See 28 U.S.C. 1391(e). * * *

*Quoted in* 162 U.S.App.D.C. at 158, 498 F.2d at 700.

**24.** 16 D.C.Code § 1909 (1973) (Revision Notes) (emphasis added).

**25.** *Cf., e. g.,* Erlenbaugh v. United States, 409 U.S. 239, 243–245, 93 S.Ct. 477, 34 L.Ed.2d 446 (1972).

**26.** *See supra,* 166 U.S.App.D.C. at —— – ——, 510 F.2d at 173–175.

congressional intent as to what individuals constitute "Federal officers and employees" within the meaning of Section 1901,[27] we must look to the interpretation of that term in other contexts and to the policies underlying the Court Reform Act in order to determine whether this petition was properly entertained by the District Court.

As early as 1815, in an action of debt brought against a federal marshal for the escape of a federal prisoner from the state jailer to whose custody he had been committed, the Supreme Court observed in dictum [28] that

[f]or certain purposes, and to certain intents, the state jail lawfully used by the United States, may be deemed to be the jail of the United States, and that keeper to be the keeper of the United States.

Randolph v. Donaldson, 13 U.S. (9 Cranch) 76, 86, 3 L.Ed. 662 (1815). *See also, e. g.*, Fanning v. United States, 4 Cir., 72 F.2d 929, 931 (1934) ("state jail officers, in executing writs of a federal court, are officers of that court and subject to punishment for contempt for disobedience of warrants committing prisoners to their custody"); Wilson v. United States, 8 Cir., 26 F.2d 215, 216 (1928) (a state "jailer and his assistants, in holding a federal prisoner [under a statute admitting federal prisoners to the state's jails for detention [29] ], become pro hac vice officers of the United States court"; federal courts have statutory power to punish as a contempt "the misbehavior of any of the officers of said courts in their official transactions"); Ex parte Shores, N.D.Iowa, 195 F. 627, 630 (1912) (punishment of state jailer for contempt for disobedience of federal court's order committing federal prisoner to his custody; "the [state jails], therefore, may be deemed jails of the United States * * * and the keepers thereof, though not strictly officers of the United States, are keepers for the United States of the prisoners committed to said jails by the courts of the United States"); In re Birdsong, S.D.Ga., 39 F. 599, 600 (1889); United States v. Martin, D.Ore., 17 F. 150, 153–155 (1883).[30]

In Reid v. Covert, 351 U.S. 487, 76 S.Ct. 880, 100 L.Ed. 1352 (1956), reversed on other grounds after rehearing, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957), the Supreme Court addressed the question whether the superintendent of the District of Columbia jail was an "officer or employee" of the United States within the meaning of 28 U.S.C. § 1252 (1970) with respect to the dependent wife of a United States Air Force sergeant who was transferred to that jail while awaiting retrial by court-martial at an air base in Washington, D. C. In

27. *See supra*, 166 U.S.App.D.C. at ——, 510 F.2d at 172.

28. The marshal was held not to be liable for the acts of the state jailer, who was not considered to be his deputy in either fact or law. *See* 13 U.S. (9 Cranch) at 85–86. The Court therefore distinguished him from a sheriff, who is legally the keeper of a jail and thus responsible for the actions of his underkeeper. *Id.*

29. *See infra*, 166 U.S.App.D.C. at —— ——, 510 F.2d at 181–182.

30. The characterization of state prison officials as federal officers with respect to federal prisoners confined in institutions under their supervision was also elaborated in United States v. Hoffman, N.D.Ill., 13 F.2d 269, 272 (1925), affirmed, 7 Cir., 13 F.2d 278 (1926):

The United States, by this arrangement with the state of Illinois, has *the lawful right to the use of the jails of the several counties of Illinois in which to confine prisoners committed by authority of the United States.* It is the duty of the sheriff, superintendent, and their deputies to receive and detain in the jail such prisoners until their terms of imprisonment expire, or they are otherwise discharged from the prison by the authority of the United States. *The state jail is to be deemed the jail of the United States for this purpose. The keeper of the jail is the keeper of the United States. Those charged with responsibility for the execution of the writs of the United States court are to that extent and for that purpose officers of the United States court,* and are subject to punishment for contempt for disobedience or disregard of the warrants or orders committing such prisoners to their custody. * * *

(Emphasis added.)

holding the superintendent to be such an officer, the Court declared:

> It has long been settled that *an officer, while holding prisoners for the United States*, is the "keeper of the United States," Randolph v. Donaldson, 9 Cranch 76, 86, 3 L.Ed. 662, and, as such, *is an officer of the United States.* Since [the Superintendent] was required to "receive and keep" prisoners of the United States, he is, to that extent, an officer of the United States. It is not necessary to say, and we do not say, that the District of Columbia in these circumstances is an "agency" of the United States. For, whether the Government should maintain its own jail in the District of Columbia, or utilize the local facilities, is simply a matter of administrative convenience * * *. For all practical purposes, the District of Columbia jail is, in this case, the "jail of the United States," Randolph v. Donaldson, *supra*, and the superintendent is its keeper. As the custodian of Mrs. Covert [the *habeas corpus* petitioner], a federal prisoner, appellant is an officer or employee of the United States for purposes of § 1252.

351 U.S. at 489–490, 76 S.Ct. at 882 (emphasis added).[31]

This court, in the context of holding that the Attorney General's congressional authorization to commit federal prisoners to the District of Columbia jail did not preclude a prisoner from availing himself of the Federal Tort Claims Act for an injury sustained in that jail, observed:

> *Since the Congress has clearly committed the custody and safekeeping of federal prisoners upon conviction to the Attorney General*, then it must be true that in this instance *the D.C. jailer was serving as the Attorney General's jailer*; and it must also be true, or at least it does not appear to the contrary in the record before us, that, *as to this federal prisoner, the Attorney General had some degree of power, commensurate with his continuing responsibility, to supervise the D.C. jailer in his handling of this particular prisoner.* We note in this regard that, for purposes of the FTCA, Congress has defined "Employee of the [federal] government" as including "persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." * * *

Close v. United States, 130 U.S.App.D.C. 125, 126, 397 F.2d 686, 687 (1968) (*per curiam*) (emphasis added). *See also* Witt v. United States, 2 Cir., 462 F.2d 1261, 1264 (1972); Fitzgerald v. Sigler, D.D.C., 372 F.Supp. 889, 896 (1974) (immediate custodian of federal prisoner detained at Lorton is "Federal officer" within meaning of 16 D.C.Code § 1901 with respect to *habeas* petition challenging detainer lodged against petitioner by United States Board of Parole based upon unexecuted parole violator warrant).[32]

---

**31.** *See also* Fitzgerald v. Sigler, D.D.C., 372 F.Supp. 889, 896 & n. 6 (1974) (commenting on and relying on Reid v. Covert).

**32.** In Frazier v. United States, 119 U.S.App. D.C. 246, 339 F.2d 745, cert. denied, 379 U.S. 948, 85 S.Ct. 446, 13 L.Ed.2d 545 (1964), the appellant had been convicted under the Federal Escape Act, 18 U.S.C. § 751 (1970), of escaping from the custody of the Attorney General, even though the escape was actually effectuated from St. Elizabeth's Hospital, to which appellant had been transferred from the District of Columbia jail by District offi-

cials. Although appellant argued that the escape was not in fact from the "custody of the Attorney General" within the intendment of the Act, this court responded:

> Under 24 D.C.Code § 425 (1961), all persons convicted of crime in the District of Columbia are committed to the custody of the Attorney General for "their terms of imprisonment." [*See* note 7 *supra*.] Since the section authorizes assignment of prisoners to institutions "whether maintained by * * * the federal government, or otherwise," it is clear that the "custody" intended is not limited to actual physical custody,

Similarly in our case, appellee was committed by the District Court to the custody of the Attorney General,[33] who in turn ordered appellee incarcerated, pursuant to the discretionary power vested in him by Congress, at the Lorton Reformatory. As delegates or agents of the Attorney General, appellants are performing the functions with which he is legally charged; as such, particularly in light of the uniformity of those opinions holding the custodian of a federal prisoner to be a federal officer with respect to that prisoner, they must be deemed to be "Federal officers or employees" within the meaning of 16 D.C. Code § 1901.[34] Congress must have been aware of those numerous precedents establishing the principle that state officials assuming responsibility for execut-

---

but denotes a type of legal custody which remains in the Attorney General even though the prisoner is assigned to an institution over which the Department of Justice has no control. * * *

* * * [T]he custody of the Attorney General is continuous as he discharges his responsibility to transfer a prisoner "from one institution to another * * * for the well-being of the prisoner." 24 D.C.Code § 425.

119 U.S.App.D.C. at 247–248, 339 F.2d at 746–747 (footnotes omitted). See also Murphy v. United States, 8 Cir., 481 F.2d 57, 61 (1973). And as this court noted in Close v. United States, 130 U.S.App.D.C. 125, 126 n.2, 397 F.2d 686, 687 n.2 (1968), it "may be surmised [that there is] considerable influence of the Attorney General over the way in which the D.C. Jail treats a federal prisoner placed there specifically for the convenience of the Attorney General."

**33.** Judge Gesell ordered the Attorney General joined as a respondent to this action. See supra, 166 U.S.App.D.C. at —— ——, 510 F.2d at 171–172. However, 28 U.S.C. § 2243 (1970) requires that the "writ, or order to show cause shall be directed to the person having custody of the person detained," while 16 D.C.Code § 1901(a) specifies that the court "shall forthwith grant the writ, directed to the officer or other person in whose custody or keeping the party [is] detained." We therefore need not reach the issue whether the petition was properly directed against the Attorney General or the Director of the District of Columbia Department of Corrections, since it is clear that the superintendent of Lorton Reformatory was a "custodian" of appellee with respect to his transfer to maximum security confinement. Cf., e. g., Eisel v. Secretary of the Army, 155 U.S.App.D.C. 366, 370 n.5, 372–377, 477 F.2d 1251, 1255 n.5, 1257–1262 (1973). In any event, whether the Attorney General alone would be a proper party for jurisdictional purposes relating to the appropriate geographical forum for the petition, see, e. g., id., 155 U.S.App.D.C. at 370 n.5, 477 F.2d at 1255 n.5 ("[i]t would be disruptive of the entire criminal habeas corpus process to create in the District of Columbia an alternative jurisdiction for habeas purposes for every federal prisoner" based on the Attorney General's "ultimate" control over their confinement and treatment); note 16 supra, in no way affects whether his status as a federal official charged with certain responsibilities affecting federal prisoners renders those to whom he delegates those responsibilities "Federal officers" for purposes of allocating jurisdiction between the Superior Court and the District Court under 16 D.C. Code § 1901 once it is clear that jurisdiction is properly laid within the District. Moreover, any fears that characterizing the Attorney General as a sufficient alternative respondent for habeas petitions from all prisoners committed to his custody will result in a massive influx of cases to the District Court are unfounded, since venue considerations as well as jurisdictional considerations will limit the cases which that court would entertain. See, e. g., Starnes v. McGuire, 168 U.S. App.D.C. ——, 512 F.2d 918 (decided Nov. 8, 1974) (petition for mandamus against U.S. Board of Parole's revocation of parole based on allegedly constitutionally inadequate and arbitrary reasons transferred under 28 U.S.C. § 1404(a) (1970) to District Court for the District of Kansas, since petition was filed by inmate of Leavenworth Penitentiary, Kansas, who was under sentence imposed by District Court of Colorado). See also id., 165 U.S. App.D.C. at ——, 512 F.2d at 932 ("where the immediate custodian is found in the same district as that of the prisoner's confinement or residence, that district, rather than the residence of some distant, ultimate custodian, is normally to be preferred"); supra, 166 U.S. App.D.C. at ——, 510 F.2d at 176.

**34.** Although individuals convicted and sentenced by the Superior Court are also committed to the custody of the Attorney General, see note 7 supra, that circumstance does not alter the fact that when he is acting pursuant to an order of a federal court, the Attorney General and those to whom he delegates his responsibilities are federal officers; to the extent he acts pursuant to an order of the Superior Court or another local court, he would probably be characterized as "other than a Federal officer" for purposes of jurisdiction under § 1901.

ing a warrant of commitment issued by a federal court are officers of that court and therefore "federal" officers for purposes of a variety of statutes; since Congress failed to expressly alter these precedents, we consider them viable in this analogous context.

■ Appellants nevertheless argue that "the basic aim of the Court Reform Act * * * was to provide for the resolution of distinctively local problems by a newly created local judiciary," [35] and that, since appellee "is not claiming procedural or constitutional irregularities either in connection with a federally imposed sentence or federal judicial proceedings * * * [but] is claiming that his constitutional rights were violated in connection with the internal operation of a prison by District officials," [36] *habeas* should lie in the Superior Court. In effect, appellants' claim is that these policies inherent in the Act implicitly dictate that they not be deemed "Federal officers" with respect to appellee. Admittedly, the "overriding intent of Congress [in enacting the Court Reform Act was] to create a largely independent local court system," Bland v. Rodgers, D.D.C., 332 F.Supp. 989, 991 (1971), and sources cited therein. *See also, e. g.,* Palmore v. United States, 411 U.S. 389, 406–409, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973). And within that system, federal courts were to exhibit "the customary deference accorded to the local administration of local matters." *See, e. g.,* Williams, Dis-

trict of Columbia Court Reorganization, 1970, 59 Geo.L.J. 477, 499 (1971). However, we believe that the interpretation of 16 D.C.Code § 1901 which places *habeas corpus* jurisdiction in the District Court with respect to all petitions filed by those individuals convicted by that court is consistent with these legislative goals.

■ In response to appellants' contention that they should not be considered "Federal officers and employees" with respect to petitioner because they are engaged in the daily operation of a correctional facility committed to the control of local authorities, it should be emphasized that the mere fact that an individual is incarcerated in a prison committed to operation by local officials,[37] and is challenging their actions in the daily administration of that prison, does not preclude the exercise of federal *habeas* jurisdiction by other federal District Courts.[38] Under 18 U.S.C. § 4082(a) (1970), a "person convicted of an offense against the United States shall be committed * * * to the custody of the Attorney General of the United States, who shall designate the place of confinement where the sentence shall be served." Such confinement may be in an institution operated by state officials, since 18 U.S.C. § 4082(b) (1970) specifies that the "Attorney General may designate as a place of confinement *any* available, suitable, and appropriate institution or facility, whether maintained by

35. Brief for appellants at 6.

36. *Id.* at 7.

37. *See, e. g.,* 24 D.C.Code § 442 (1973); note 4 *supra.*

38. It must be emphasized that we are here addressing only those cases in which remedy by way of *habeas corpus* is proper. As has been noted by the District Court:

[There is a] traditional deference of the courts to the discretion of the internal ad-

ministration of the prison system. However, the discretion of prison authorities is not unlimited and if paramount federal constitutional or statutory rights come into play, prison regulations must conform to them.

Bland v. Rodgers, D.D.C., 332 F.Supp. 989, 993 (1971), and sources cited therein. For an example of federal supervision over internal prison administration procedures, *see, e. g.,* Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (action brought under 42 U.S.C. § 1983 (1970)).

Congress contemplated that such confinement might occur relatively frequently, for it specified in 18 U.S.C. § 4002 (1970) that "[f]or the purpose of providing suitable quarters for the safekeeping, care, and subsistence of all persons held under authority of any enactment of Congress, the Director of the Bureau of Prisons may contract, for a period not exceeding three years, with the Federal Government or otherwise, * * * and may at any time transfer a person from one place of confinement to another." [39] (Emphasis added.) Indeed, the proper authorities of any State, Territory, or political subdivision thereof, for the imprisonment, subsistence, care and proper employment of such persons."

In any jurisdiction other than the District of Columbia, it would be beyond contention that an individual convicted and sentenced in a federal court, but ordered committed to such a state-operated facility by the Attorney General, could bring a *habeas* petition challenging certain actions by prison officials in the relevant federal District Court without first exhausting available state remedies. Under 28 U.S.C. § 2241 (1970), federal District Courts are empowered to issue writs of *habeas corpus* when, *inter alia*, a prisoner "is in custody under or by color of the authority of the United States", *id.* § 2241(c)(1), or "is in custody * * * in pursuance of * * * an order, process, judgment or decree of

a court or judge of the United States," *id.* § 2241(c)(2). And the exhaustion of state remedies requirement of 28 U.S.C. § 2254 (1970) would not apply to such a prisoner, since that provision only applies to "a person in custody *pursuant to the judgment of a State court.*" [40] It should thus be clear that a prisoner, convicted by a federal court in another jurisdiction and ordered incarcerated in a state prison by the Attorney General, would have immediate access to a federal forum even for *habeas* petitions which properly concern the day-to-day administration of the institution by local officials. To deny such access to an individual convicted of a federal crime in a federal court in this jurisdiction, but incarcerated in a locally administered facility by designation of the Attorney General, merely because the basis of the petition was a prison disciplinary matter, would likely constitute a denial of equal protection.

Thus, in light of 16 D.C.Code § 1909, which specifies that the District *habeas* provisions are not to be construed to restrict the general federal *habeas* provisions,[41] and considering the principle that Congress is presumed to have enacted constitutionally permissible legislation, we would not construe Section 1901 to prevent an individual convicted of federal crimes in the District Court from petitioning that court to exercise a continuing supervisory role over his treatment during the period of his incarcera-

---

**39.** The provisions of § 4082(a) and (b) are mirrored for all individuals convicted in the District by 24 D.C.Code § 423, *quoted* note 7 *supra.*

**40.** Although Preiser v. Rodriguez, *supra* note 2, 411 U.S. at 489–492, 93 S.Ct. 1827, interpreted 28 U.S.C. § 2254 to require exhaustion of state remedies when *state* prisoners challenge the fact or duration of their confinement, even when the specific action challenged has been taken by a state administrative rather than judicial agency, there was no question in *Preiser* that the prisoners were initially placed "in custody pursuant to a judgment of a State court." We do not believe that the Court also intended to overrule

the multitude of cases establishing that state jailers are federal jailers when they are holding federal prisoners, *see supra*, 166 U.S.App.D.C. at ———, 510 F.2d at 178–180, particularly since there is no justification in the language of the general *habeas* provisions for such a holding. Indeed, three Justices felt there was no justification for such a holding even with respect to challenges by state prisoners to the conditions of their confinement. *See* 411 U.S. at 500–525, 93 S.Ct. 1827 (Brennan, J., with whom Douglas & Marshall, JJ., join, dissenting).

**41.** *See supra*, 166 U.S.App.D.C. at ———, 510 F.2d at 176–177.

tion. *Cf.* United States v. Thompson, 147 U.S.App.D.C. 1, 4–12, 452 F.2d 1333, 1336–1344 (1971) (construction of post-conviction bail provisions of Court Reform Act). If that incarceration is in an institution under local control, "the D.C. jailer [is] serving as the Attorney General's jailer"[42] and is amenable to suit in District Court as a "Federal officer or employee" within the comprehension of Section 1901. Thus the fact that the writ challenges the daily disciplinary actions of prison officials is not a factor compelling the statutory construction urged by appellants.[43]

▅▅▅ Of course the mere fact that the District Court may, in certain instances, entertain *habeas* petitions that affect the day-to-day administration of local correctional facilities does not necessarily mean that it may do so with respect to an individual convicted of *local* crimes by the District Court.[44] Such an individual does not stand in exactly the same position as an individual convicted in District Court of a *federal* crime either before or after the Court Reform Act was passed, so the above equal protection argument would be inapposite. Due to the unique status of the District of Columbia, the District Court before the Court Reform Act in effect functioned as both a local and federal

court and, as already noted, the intent of the Act was to create a local judicial system that would place prosecution of crime in the District on the same footing as in other states. *See, e. g.,* Palmore v. United States, *supra,* 411 U.S. at 392–393 n. 2, 407–409, 93 S.Ct. 1670.[45] Appellants' contention could thus be interpreted as an assertion that the Superior Court undertook all functions that a state court would perform, and that all actions which the District Court executed before the Court Reform Act but which would be taken by the Superior Court after that Act should be considered to have been done by the Superior Court in the first instance. Appellee, who stands convicted of local crimes, would under this analysis be treated as an individual convicted in a state court who must first[46] exhaust state remedies before filing a *habeas* petition in federal court.

▅▅▅ We find this argument to be no more persuasive than the "local prison administration" argument in determining whether appellants were acting as "Federal officers and employees" with respect to appellee. Although local courts existed prior to the Court Reform Act,[47] Congress had deliberately chosen to invest the federal courts with the responsibility of trying local crimes.[48] This congressional distribution of judicial power was a legitimate exercise of Con-

---

42. Close v. United States, *supra,* 166 U.S.App.D.C. at ——— ——, 510 F.2d at 179–180, note 32. *See generally supra,* 166 U.S.App.D.C. at ——— ——, 510 F.2d at 178–180.

43. *See also* note 2 *supra.*

44. *See* note 6 *supra.*

45. *See also supra,* 166 U.S.App.D.C. at —— ——, 510 F.2d at 181.

46. *See* note 3 *supra.*

47. The Superior Court constitutes a consolidation of the former District of Columbia Court of General Sessions, the Juvenile Court of the District of Columbia, and the District of Columbia Tax Court, *see* Court Reform Act

§ 111, 84 Stat. 482, codified as 11 D.C.Code § 901 (1973), as well as a replacement of the District Court with respect to most local matters previously handled by the latter court.

48. Before the Court Reform Act the District Court had exclusive jurisdiction of all felonies (except juveniles retained by the Juvenile Court) and concurrent jurisdiction with the District of Columbia Court of General Sessions, *see* note 47 *supra,* over all misdemeanors. *See generally, e.g.,* H.R. Rep. No. 907, 91st Cong., 2d Sess., 30–35 (1970). However, the District Court's "consideration of 'purely local affairs [was] obviously subordinate and incidental.'" Palmore v. United States, 411 U.S. 389, 407, 93 S.Ct. 1670, 1681, 36 L.Ed.2d 342 (1973), *quoting* O'Donoghue v. United States, 289 U.S. 516, 539, 53 S.Ct. 740, 77 L.Ed. 1356 (1933). *See also* note 53 *infra.*

gress' Article III power to establish inferior courts and its plenary Article I powers with respect to governing the District, *cf., e. g.*, Palmore v. United States, *supra*, 411 U.S. at 397–403, 405–407, 93 S.Ct. 1670, 36 L.Ed.2d 342, and reflected the fact that "the District is truly *sui generis* in our governmental structure." *Cf.* District of Columbia v. Carter, 409 U.S. 418, 432, 93 S.Ct. 602, 610, 34 L.Ed.2d 613 (1973). Appellant was tried, convicted, sentenced, and resentenced by the District Court in furtherance of this congressionally mandated responsibility.[49] That federal court issued the order under which the Attorney General assumed custody of and responsibility for appellee, a responsibility which he subsequently delegated to appellants. In accepting custody of appellee, the Attorney General and appellants were acting as officers of the District Court, which could punish them for contempt for failure to properly fulfill their duties as custodians,[50] and it would be strange indeed if that court could not effectuate its review of their actions via a writ of *habeas corpus.* Thus, had the Court Reform Act never been enacted, it would be clear that appellee could petition the District Court for the writ which he in fact sought, and that court would have been remiss in its judicial responsibilities if it did not ensure that the conditions of appellee's incarceration met constitutionally acceptable standards. It is simply anomalous to suggest that a court, whose duty it is to ensure that the full vitality of the Great Writ is preserved inviolate, could be precluded from exercising continuing over-

sight of the manner in which individuals it commits to custody are treated, particularly when those executing the court's commitment orders are considered officers of the court with respect to those prisoners. As Judge Gesell asserted, a court has an "inherent power" to act with respect to prisoners "committed under its aegis."[51]

At the time of his commitment appellee was thus unquestionably a federal prisoner who could look to the District Court for assurance that during his period of incarceration he would be subjected to no unconstitutional or illegal restraints on his liberty. Congress, which in enacting the Court Reform Act should have been aware of the plethora of cases holding that the keeper of a prisoner convicted and sentenced by a federal court is a federal officer with respect to that prisoner, nevertheless utilized the phrase "Federal officers and employees" to delimit the scope of District Court jurisdiction over District of Columbia *habeas* actions, and made no attempt to give that phrase a different content than that already developed through judicial precedent. Since there is no indication that Congress intended that Section 1901 would retroactively alter the "federal prisoner" status of individuals such as appellee, we believe Congress intended that the District Court continue in its supervisory role with respect to individuals that it sentenced,[52] whether for local or federal crimes, and that the keepers of those individuals continue to be considered "Federal officers

---

**49.** *See* note 6 *supra.*

**50.** *See* 18 U.S.C.A. § 401(2) (1970) and cases cited therein at notes 91 & 104. *See also supra,* 166 U.S.App.D.C. at ――――――, 510 F.2d at 178 & note 30.

**51.** *See supra,* 166 U.S.App.D.C. at ――, 510 F.2d at 171–172. *See also* 28 U.S.C. § 1651(a) (1970) ("all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law").

**52.** *Cf.* Palmore v. United States, *supra* note 48, which held that the District of Columbia Code is not a "statute of any state" within the meaning of 28 U.S.C. § 1257(2) (1970):

> We are entitled to assume that in amending § 1257 [by the Court Reform Act], Congress legislated with care, and that had Congress intended to equate the District Code and state statutes for the purposes of § 1257, it would have said so expressly, and not left the matter to mere implication.

411 U.S. at 395, 93 S.Ct. at 1675 (footnote omitted).

and employees" for *habeas* jurisdictional purposes.[53]

Affirmed.

---

**53.** There are other factors which indicate that Congress did not intend that the Court Reform Act would terminate District Court supervision of such prisoners merely because, in the future, the Superior Court would be responsible for prosecution of local crime. For example, appellants concede, as they must, that if appellee were claiming procedural or constitutional irregularities in connection with his trial or sentencing, his remedy would lie in the District Court. *See* brief for appellants at· 7. Under 28 U.S.C. § 2255 (1970):

*A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the ' sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.*

(Emphasis added.) Indeed a *habeas* petition cannot even be entertained with respect to matters cognizable under § 2255 unless the § 2255 motion has been made or unless it appears that the remedy by motion would be inadequate to test the legality of the detention, and 16 D.C.Code § 1909, *see supra*, 166 U.S.App.D.C. p. ——, 510 F.2d p. 177, specifies that the *habeas* chapter of the D.C.Code is not to alter federal jurisdiction under chapter 23 of Title 28 of the U.S. Code, which encompasses § 2255.

Moreover, the Court Reform Act, title I, ch. 5, subch. I, § 11–502,·84 Stat. 477, specified that the District Court was to retain jurisdiction of cases pending in that court before the effective date of the Act, as well as certain cases filed within 18 months thereafter and any cases in which a D.C.Code offense is joined in an indictment with any federal offense. Thus, even after the Court Reform Act appellee could have been tried in the District Court. *See* note 6 *supra*. Furthermore, the District Court retains jurisdiction to resentence individuals committed under its auspices, and appellee was in fact resentenced by Judge Pratt after the passage of the Court Reform Act. *See* id. These provisions belie any allegation, *see supra*, 166 U.S. App.D.C. p. ——, 510 F.2d p. 183, that the Superior Court should be considered to have sentenced appellee for his local crimes and that appellants should therefore be considered officers of the Superior Court rather than of the District Court with respect to their custody of appellee. An interpretation of § 1901 that continues jurisdiction over appellee's *habeas* claims in the District Court is, like the above provisions and those providing for a phased transfer of jurisdiction to the Superior Court, consistent with the Court Reform Act's purpose of maximizing the fairness and efficiency of the administration of justice within the District. *See, e. g.,* S.Rep.No.405, 91st Cong., 1st Sess. 1 (1970).