Ronnie L. JONES, Appellant,

v.

Delbert C. JACKSON, Appellee.

No. 79–1085.

District of Columbia Court of Appeals.

Argued April 29, 1980.

Decided June 11, 1980.

Kathleen Hamor, law student, with whom Michael E. Geltner, Supervising Atty., Washington, D. C., was on brief, for appellant.

Benjamin B. Sendor, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry and Peter E. George, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before KERN, GALLAGHER, and FERREN, Associate Judges.

FERREN, Associate Judge:

Ronnie L. Jones appeals the dismissal of his habeas corpus petition. The trial court held that the Superior Court lacks jurisdiction, apparently on the ground that at the time Jones filed his petition, he was serving a 1973 sentence imposed by the United States District Court. Jones contends, to the contrary, that the Superior Court has jurisdiction because the petition is directed at District of Columbia officials who were holding him under a 1973 Superior Court sentence at the time the petition was filed. We agree with the trial court and, accordingly, affirm the dismissal.

## I.

On August 10, 1979, Jones filed a petition for a writ of habeas corpus in Superior Court, seeking release from the District of Columbia Jail. He named federal and District officials as respondents.[1] Jones asserted that he had been held since July 25, 1979, on an expired parole violator warrant which had been lodged as a detainer on April 28, 1977, while he had been serving a sentence in a federal penitentiary.

The court directed a show cause order to the respondents on August 13, 1979. They responded, urging dismissal of the petition for lack of jurisdiction. A hearing on August 28, 1979, confirmed the following information filed by the parties summarizing the history of Jones' criminal convictions:

On January 18, 1973, Jones was convicted in the United States District Court for the District of Columbia on two counts of assault on a police officer, D.C. Code 1973, § 22–505(a), and possession of an unregistered firearm, 26 U.S.C. § 5861(d) (1976). He was sentenced to a maximum of five years' imprisonment on the three counts, to be served concurrently (hereafter the 1973 federal sentence).

On July 18, 1973, Jones pleaded guilty in Superior Court to first degree burglary while armed. D.C. Code 1973, § 22–1801(a). He was sentenced to a term of one to three years' imprisonment, to run consecutively to his federal sentence (hereafter the 1973 Superior Court sentence).

On October 17, 1975, Jones was released on parole from a federal penitentiary. On April 15, 1977, while still on parole, Jones was convicted in the United States District Court for the District of Columbia of unlawful possession of a controlled substance with intent to distribute, 21 U.S.C. § 841(a) (1976); unlawful possession of narcotics,

D.C. Code 1973, § 33–402(a); and carrying a pistol without a license, id. at § 22–3204. On April 28, 1977, before Jones had been sentenced on the narcotics and weapons convictions, the United States Parole Commission (hereafter the Commission) issued a parole violator warrant against him. The warrant asserted that the 1977 convictions constituted a violation of the parole resulting from Jones' 1973 federal sentence. The warrant was lodged as a detainer with the District of Columbia Department of Corrections, but, following the Commission's customary practice, it was not executed. See *Moody v. Daggett*, 429 U.S. 78, 82–85, 97 S.Ct. 274, 276–277, 50 L.Ed.2d 236 (1976). On May 17, 1977, Jones was sentenced to the following concurrent prison terms: ten years (with a six-year special parole term) for unlawful possession of a controlled substance with intent to distribute, five years for unlawful possession of narcotics, and five years for carrying a pistol without a license (hereafter, collectively, the 1977 federal sentence).[2] Jones was confined to the federal penitentiary in Atlanta.

After notice to Jones, the Commission reviewed his detainer in late 1977 and decided to allow it to stand, postponing execution of the parole violator warrant until the end of the 1977 federal sentence. *See id.* The Commission notified Jones of this decision by letter of March 7, 1978.

Jones was transferred to the Lorton Correctional complex in June 1979. He filed a motion for a reduction of his 1977 sentence with the United States District Court on July 13, 1979. *See* Fed.R.Crim.P. 35. He was transferred to the District of Columbia Jail on July 25, 1979, to facilitate a hearing on the motion. The same day, a federal district judge granted the motion, reducing Jones' 1977 federal sentence to time already served plus the six-year special parole term.

---

1. Jones named Benjamin Civiletti, Attorney General of the United States; Norman Carlson, Director, United States Bureau of Prisons; Cecil C. McCall, Chairman, United States Parole Commission; Delbert C. Jackson, Director, District of Columbia Department of Corrections; and George Holland, Superintendent, District of Columbia Jail.

2. On an appeal of this conviction, the United States Court of Appeals for the District of Columbia Circuit affirmed, but remanded for the trial court to vacate the sentence on one of the two narcotics counts. The trial court vacated the sentence on the second count, leaving Jones with a ten-year prison sentence, a concurrent five-year sentence, and a six-year special parole term.

The next day, July 26, 1979, the United States Marshal executed the parole violator warrant against Jones in the District of Columbia Jail. Jones filed the habeas corpus petition at issue here on August 10, 1979. On August 17, 1979, after a hearing, the District of Columbia Board of Parole, which was handling Jones' case for the Commission as a matter of comity, revoked Jones' parole on his 1973 federal sentence and reparoled him with provision for special narcotics supervision.

On September 4, 1979, after a show cause hearing, a Superior Court judge dismissed Jones' habeas corpus petition against the federal respondents for lack of jurisdiction.[3] On October 10, 1979, the court dismissed the petition against the District of Columbia respondents, once again for lack of jurisdiction. Jones appeals the latter dismissal.

## II.

The parties agree that resolution of the jurisdictional issue turns on a construction of D.C. Code 1973, § 16–1901, which provides:

> (a) A person committed, detained, confined, or restrained from his lawful liberty within the District, under any color or pretense whatever, or a person in his behalf, may apply by petition to the appropriate court, or a judge thereof, for a writ of habeas corpus, to the end that the cause of the commitment, detainer, confinement, or restraint may be inquired into. The court or the judge applied to, if the facts set forth in the petition make a prima facie case, shall forthwith grant the writ, directed to the officer or other person in whose custody or keeping the party so detained is returnable forthwith before the court or judge.

3. Jones does not contest dismissal of the federal respondents.

4. Under D.C. Code 1973, § 24–209, the Commission exercises power and authority over prisoners convicted in the District of Columbia and confined in prisons or penitentiaries outside the District. *See Story v. Rives*, 68 App. D.C. 325, 329, 97 F.2d 182, 186, *cert. denied*, 305 U.S. 595, 59 S.Ct. 71, 83 L.Ed. 377 (1938).

> (b) Petitions for writs directed to Federal officers and employees shall be filed in the United States District Court for the District of Columbia.

> (c) Petitions for writs directed to any other person shall be filed in the Superior Court of the District of Columbia.

Jones accordingly could seek habeas corpus relief in either the federal or the local court, depending on whether the District of Columbia officials in charge of his incarceration were acting as federal or local officials on August 10, 1979, the date he filed the petition. *See McCall v. Swain*, 166 U.S. App.D.C. 214, 225–28, 510 F.2d 167, 178–81 (1975). The proper characterization of these officials depends, in turn, on whether Jones was serving a federal or a local sentence at the time the petition was filed. *See id.* at 229–30, 510 F.2d at 182–83; *Bland v. Rodgers*, 332 F.Supp. 989 (D.D.C. 1971); *Blake v. Florida*, 272 F.Supp. 557 (S.D.Fla. 1967), *aff'd* 395 F.2d 758 (5th Cir. 1968) (per curiam).

Jones contends that two procedural infirmities rendered his federal custody improper. As a result, he argues, the District of Columbia officials must have been acting without federal authority in holding him on the warrant; thus, they had to be holding him under his consecutive, 1973 Superior Court sentence.

■ A. Jones first asserts that on April 28, 1977, when the parole violator warrant was lodged as a detainer, his 1973 federal sentence had expired; thus, the detainer was too late even arguably to toll his 1973 federal sentence. As a result, Jones says, he was serving his 1973 Superior Court sentence at the time the warrant was lodged. It would follow that the Superior Court had jurisdiction to consider the habeas corpus petition.[4]

We understand, therefore, that in granting parole to Jones in October 1975, the Commission took into consideration both the 1973 federal and 1973 Superior Court sentences. As a consequence, there would be no transfer of authority or other event to signify the end of the 1973 federal sentence and the beginning of the 1973 Superior Court sentence.

We conclude that this argument has no merit, given the facts of Jones' incarceration. He was sentenced by the federal district court to five years, or 1,826 days, on March 23, 1973. He had served 317 days of presentence jail time, which must be credited for purposes of determining his maximum sentence. Thus, his 1973 federal sentence expired 1,509 days after March 23, 1973, or on May 10, 1977. Jones, therefore, was still in federal custody on April 28, 1977, when the warrant was lodged as a detainer.

■ Jones argues, however, that 240 days of earned "good time" in addition to presentence jail time must be deducted from his federal sentence, setting back the expiration date of the 1973 federal sentence to September 5, 1976. We do not agree. In the federal penal system, good time serves to reduce the maximum prison term, but not the maximum sentence, for an offense. *See Bell v. Putman,* 548 F.2d 749, 751 (8th Cir.), *cert. denied,* 431 U.S. 958, 97 S.Ct. 2684, 53 L.Ed.2d 277 (1977); *McKinney v. Taylor,* 358 F.2d 689, 690 (10th Cir. 1966); *Birch v. Anderson,* 123 U.S.App.D.C. 153, 156–57, 358 F.2d 520, 523–24 (1965). There is no way around the fact, therefore, that Jones was still serving his 1973 federal sentence when the detainer was lodged.[5]

■ B. Jones contends, second, that even if he was still under his 1973 federal sentence when the detainer was *lodged* that sentence had expired before the warrant was *executed* on July 26, 1979; therefore, by virtue of his 1973 consecutive sentence, he had come under the jurisdiction of the Superior Court. The government responds that that lodging of the detainer on April 28, 1977, tolled Jones' 1973 federal sentence, preserving federal jurisdiction. We agree with the government.

Under 18 U.S.C. § 4213(a)(2) (1976), the Commission may issue a warrant for violation of parole:

(a) If any parolee is alleged to have violated his parole, the Commission may—

\* \* \* \* \* \*

(2) issue a warrant and retake the parolee as provided in this section.

*See also* 28 C.F.R. § 2.44(a)(2) (1979). Such a warrant may be placed against the parole violator as a detainer:

Conviction for a Federal, State, or local crime committed subsequent to release on parole shall constitute probable cause for purposes of subsection (a) of this section. In cases in which a parolee has been convicted of such a crime and is serving a new sentence in an institution, a parole revocation warrant or summons issued pursuant to section 4213 may be placed against him as a detainer. Such detainer shall be reviewed by the Commission within one hundred and eighty days of notification to the Commission of placement. The parolee shall receive notice of the pending review, have an opportunity to submit a written application containing information relative to the disposition of the detainer, and, unless waived, shall have counsel as provided in subsection (a)(2)(B) of this section to assist him in the preparation of such application. [18 U.S.C. § 4214(b)(1) (1976).]

*See also* 28 C.F.R. § 2.47(a) (1979). The Commission, therefore, acted properly here in issuing a parole violator warrant upon Jones' 1977 convictions in United States

---

5. At oral argument, Jones' counsel contended that 18 U.S.C. § 4164 (1976) also barred the lodging of a federal detainer, thus precluding any argument that the 1973 federal sentence had been tolled. That section provides, in relevant part:

A prisoner having served his term or terms less goodtime deductions shall, upon release, be deemed as if released on parole until the expiration of the maximum terms or terms for which he was sentenced less one hundred and eighty days.

The argument is that § 4164, in effect, permits good time to reduce the maximum prison term by 180 days, and that a detainer accordingly cannot be lodged against a parolee within 180 days of the end of the maximum prison term. We cannot agree that § 4164 prohibited the lodging of a detainer during the last 180 days of Jones' parole. Section 4164 applies only to prisoners released early for good time, not to those, like Jones, who were released through discretionary parole procedures. *See Chieppa v. Krimsky,* 169 F.Supp. 337 (S.D.N.Y. 1959).

District Court, and in lodging it as a detainer before Jones began serving his 1977 federal sentence.

At the "review" hearing required by § 4214(b)(1), the Commission is directed to determine:

whether all or any part of the unexpired term being served at the time of parole [here, the 1973 federal and Superior Court sentences] shall run *concurrently or consecutively* with the sentence imposed for the new offense [here, the 1977 federal sentence], but in no case shall service together with such time as the parolee has previously served in connection with the offense for which he was paroled, be longer than the maximum term for which he was sentenced in connection with such offense. [18 U.S.C. § 4210(b)(2) (1976) (emphasis added).]

Thus, pursuant to this provision, the Commission has three options after the hearing:

(1) It may execute the warrant lodged as a detainer and revoke the parole. The sentence reinstated by the parole revocation and the sentence for the new offense would run concurrently if the Commission exercised this option. *See Moody, supra,* 429 U.S. at 83–84, 97 S.Ct. at 277.

(2) The Commission may dismiss the warrant and detainer. *Id.* at 84, 97 S.Ct. at 277. This option has the effect of leaving the original parole undisturbed, to run concurrently with the new sentence.

(3) The Commission may decide simply to let the detainer stand, unexecuted, and remain so until it determines that further review is appropriate. *See id.* at 84, 97 S.Ct. at 277; 18 U.S.C. § 4214(b)(3). Under this option, if the Commission waited to act until after the sentence for the new offense had run, the sentence reinstated by the execution of the parole revocation warrant inevitably would become consecutive to the newer sentence. *See Moody, supra* at 84, 97 S.Ct. at 277. In the present case, the Commission exercised this third option at a review hearing in late 1977. By letter of March 7, 1978, Jones was notified that his detainer would remain unexecuted.[6]

Under the Commission's regulations, the issuance of a parole violator warrant tolls the sentence to which it relates until the Commission makes a final determination as to parole revocation:

The issuance of a warrant under this section suspends the running of a sentence until such time as the parolee may be retaken into custody and a final determination of the charges may be made by the Commission. [28 C.F.R. § 2.44(d) (1979).]

Once the parole violator warrant has been executed, the parole revocation determination must be made promptly, but, confirming the third option set forth above, federal courts have upheld the practice of permitting a detainer for a parole violation to stand, unexecuted, for as long as the violator serves a sentence for the crime constituting that parole violation. *See, e.g., Saulsbury v. United States,* 591 F.2d 1028, 1034 (5th Cir.), *cert. denied,* 444 U.S. 857, 100 S.Ct. 118–19, 62 L.Ed.2d 77 (1979); *Gaddy v. Michael,* 519 F.2d 669, 674 (4th Cir. 1975), *cert. denied,* 429 U.S. 998, 97 S.Ct. 524, 50 L.Ed.2d 608 (1976); *Small v. Britton,* 500 F.2d 299, 302 (10th Cir. 1974); *Schoffner v. United States Board of Parole,* 416 F.Supp. 759, 761–62 (M.D.Pa. 1976), *aff'd,* 547 F.2d 1164 (3d Cir. 1977). It follows, apropos of 28 C.F.R. § 2.44(d), that the detainer not only may stand, but it will toll the sentence then being served. *See Saulsbury, supra* at 1029; *United States ex rel. LiPuma v. Gengler,* 411 F.Supp. 948, 950 (S.D.N.Y. 1976).[7]

---

**6.** The record does not reveal the date of the review hearing; Jones does not challenge it as untimely.

**7.** These decisions are consistent with the Supreme Court's decision in *Moody, supra* at 89, 97 S.Ct. at 279 (due process is not implicated when the Commission refuses to hold an immediate parole revocation hearing upon the lodging of a parole violator warrant as a detainer; due process requires an "adversary parole hearing" only upon "execution of the warrant"). Although *Moody* arose under the predecessor to the 1976 Parole Commission and Reorganization Act at issue here, 18 U.S.C.

. In summary, the lodging of a parole violator warrant against Jones on April 28, 1977 tolled the running of his 1973 federal sentence until parole for that sentence was revoked on August 17, 1979. Accordingly, Jones was in federal custody, albeit in the hands of District of Columbia officials as a matter of comity, when he filed his petition for writ of habeas corpus on August 10, 1979. Thus, the Superior Court lacked jurisdiction to entertain his petition; he must seek relief in the United States District Court for the District of Columbia. *See* D.C. Code 1973, § 16–1901.

*Affirmed.*

§§ 4201 *et seq.*, the Court stated that the new Act was promulgated "principally to codify the [Commission's] existing practices." *Moody, supra* at 82, 97 S.Ct. at 276 (footnotes omitted).