**Leroy A. FRAZIER, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 18514.**

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 17, 1964.

Decided Nov. 19, 1964.

Petition for Rehearing en Banc
Denied Jan. 5, 1965.

Mr. Vincent A. Pepper (appointed by this court), Washington, D. C., for appellant.

Mr. Robert W. Healy, Washington, D. C., also entered an appearance for appellant.

Mr. Anthony A. Lapham, Asst. U. S. Atty., with whom Messrs. David C. Ache-

---

son, U. S. Atty., and Frank Q. Nebeker and Victor W. Caputy, Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, WRIGHT and McGOWAN, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge.

Appellant was convicted of escaping from the custody of the Attorney General[1] while serving a sentence for an earlier conviction of narcotics violations. His escape was from St. Elizabeths Hospital, to which, some five months earlier, he had been transferred from the District of Columbia Jail under 24 D.C. CODE § 302 (1961).[2] On appeal he contends that this escape was not from the "custody of the Attorney General" and, hence, not a violation of the Federal Escape Act.[3]

Under 24 D.C.CODE § 425 (1961), all persons convicted of crime in the District of Columbia are committed to the custody of the Attorney General for "their terms of imprisonment."[4] Since the section authorizes assignment of prisoners to institutions "whether maintained by * * * the federal government, or otherwise," it is clear that the "custody" intended is not limited to actual physical custody, but denotes a type of legal custody which remains in the Attorney General even though the prisoner is assigned to an institution over which the Department of Justice has no control.[5] Appellant contends, however,

1. The indictment charged that appellant, "having been lawfully committed, on July 2, 1959, to the custody of the Attorney General, * * * did unlawfully and feloniously flee and escape from such custody."

2. 24 D.C.CODE § 302 provides:
"Any person while serving sentence of any court of the District of Columbia for crime, in a District of Columbia penal institution, and who, in the opinion of the Director of the Department of Corrections of the District of Columbia, is mentally ill, shall be referred by such Director to the psychiatrist functioning under section 24–106, and if such psychiatrist certifies that the person is mentally ill, this shall be sufficient to authorize the Director to transfer such person to a hospital for the mentally ill to receive care and treatment during the continuance of his mental illness."

3. 18 U.S.C. § 751:
"Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or commissioner, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both * * *."

4. 24 D.C.CODE § 425 reads:
"All prisoners convicted in the District of Columbia for any offense, * * * shall be committed, for their terms of imprisonment, and to such types of institutions as the court may direct, to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinements where the sentences of all such persons shall be served. The Attorney General may designate any available, suitable, and appropriate institutions, whether maintained by the District of Columbia Government, the federal government, or otherwise, or whether within or without the District of Columbia. The Attorney General is also authorized to order the transfer of any such person from one institution to another if, in his judgment, it shall be for the well-being of the prisoner or relieve overcrowding or unhealthful conditions in the institution where such prisoner is confined, or for other reasons."

5. The second definition of the word "custody" given in Webster's Third New International Dictionary (Unabridged) (1961) is "judicial or penal safekeeping: control of a thing or person with such actual *or constructive* possession as fulfills the purpose of the law or duty requiring it." (Emphasis added.) Cases under the Federal Escape Act have given the term "custody of the Attorney General" a similar definition. Tucker v. United States, 9 Cir., 251 F.2d 794 (1958) (escape from "Jail Unit" of Los Angeles County General Hospital); Unit-

that custody of the Attorney General ended when appellant was transferred to St. Elizabeths pursuant to 24 D.C.Code § 302. We do not agree.

24 D.C.Code § 302 outlines the responsibility of the District of Columbia prison director with respect to treatment of a prisoner who becomes mentally ill while serving his sentence in a local prison. Transfer of the physical custody of the mentally ill prisoner to a mental hospital under this statute is neither inconsistent with, nor exclusive of, the legal custody of the Attorney General under 24 D.C.Code § 425.[6] 24 D.C.Code § 425 specifically authorizes the Attorney General to transfer prisoners committed to his custody "from one institution to another if, in his judgment, it shall be for the well-being of the prisoner * * *." In 24 D.C.Code § 302 Congress merely provides a safeguard to insure that a prisoner is mentally ill before he is transferred to a mental institution. And 24 D.C.Code § 303(b) (1961)[7] assures his transfer out of a mental institution when the prisoner is "restored to mental health." Thus the custody of the Attorney General is continuous as he discharges his responsibility to transfer a prisoner "from one institution to another

* * * for the well-being of the prisoner." [8] 24 D.C.Code § 425.

Another point raised by appellant concerns the sufficiency of the Government's evidence on the issue of mental responsibility for the crime charged.[9] On trial the Government produced a psychiatrist from St. Elizabeths who testified as to the nature of appellant's mental disorder. His opinion was that the escape charged was not the product of any mental disease or defect. The appellant offered no evidence of his own on the issue, but moved for acquittal at the close of the Government's case.[10] The trial court denied the motion and, sitting without a jury, found the appellant mentally responsible and guilty as charged.

Since the evidence is not such as to compel "a reasonable doubt concerning the accused's responsibility," [11] the factual finding of the trial court must stand.[12]

Affirmed.

FAHY, Circuit Judge (dissenting).

After appellant was committed to the custody of the Attorney General for the term of his imprisonment in accordance with 24 D.C.Code § 425,[1] intervening

---

ed States v. Piscitello, 2 Cir., 231 F.2d 443 (1956) (escape from Public Health Service guards); Giles v. United States, 9 Cir., 157 F.2d 588 (1946).

6. See Note 5, *supra*.

7. 24 D.C.Code § 303(b) reads:
   "When any person confined in a hospital for the mentally ill while serving sentence shall be restored to mental health within the opinion of the superintendent of the hospital, the superintendent shall certify such fact to the Director of the Department of Corrections of the District of Columbia and such certification shall be sufficient to deliver such person to such Director according to his request."

8. Prisoners committed to the custody of the Attorney General receive credit on their sentences for the time served in mental institutions. 18 U.S.C. § 4242.

9. On trial and on appeal, appellant concedes his competency to stand trial.

Shortly after his return to custody, and three months before his trial for escape, he was examined by the staff at St. Elizabeths and certified as restored to mental health. Pursuant to 24 D.C.Code § 303 (b), he was thereupon transferred out of St. Elizabeths to a local jail.

10. On the basis of appellant's record, the trial court ruled during the Government's case that the burden of proving mental responsibility beyond a reasonable doubt was upon the Government.

11. McDonald v. United States, 114 U.S. App.D.C. 120, 123, 312 F.2d 847, 850 (1962) (*en banc*).

12. Barkley v. United States, 116 U.S.App. D.C. 334, 323 F.2d 804 (1963); Williams v. United States, 114 U.S.App.D.C. 135, 312 F.2d 862 (1962); Hawkins v. United States, 114 U.S.App.D.C. 44, 310 F.2d 849 (1962).

1. Set forth in footnote 4 of the court's opinion.

events brought about a change in his custody. While serving his sentence in a District of Columbia penal institution the Director of the Department of Corrections of the District of Columbia became of the opinion that appellant was mentally ill. In accordance with 24 D.C. Code § 302,[2] he referred appellant to the Legal Psychiatric Service functioning under Section 24 D.C.Code § 106. The examining psychiatrists certified that appellant was mentally ill. The Director, under the authority of Section 302, thereupon transferred appellant to St. Elizabeths Hospital. Thus, the physical custody of appellant was removed to an institution in no manner under the supervision, administration or control of the Attorney General. It is part of the Department of Health, Education and Welfare, and is administered by the Secretary of that Department through a Superintendent responsible to him.

Appellant escaped from St. Elizabeths. But he was not indicted under those provisions of 18 U.S.C. § 751,[3] applicable to an escape from an institution in which one has been confined by direction of the Attorney General, "whether maintained by * * * the federal government, or otherwise," language quoted in the court's opinion from 24 D.C.Code § 425. The indictment rests solely upon the provision of Section 751 covering an "escape from the custody of the Attorney General."

The Federal Escape Act is of course a criminal statute; and the ordinary meaning of its language above quoted covers only an escape from the physical custody of the Attorney General or an agent or authorized representative of the Attorney General, which did not here occur. There is language in Section 751 which covers an escape from an institution in which a person had been confined under the direction of the Attorney General, but the indictment in this case does not charge such an offense, as the United States concedes.

The court's opinion, however, takes the position that appellant escaped from "the custody of the Attorney General," as charged, upon the theory that he remained in the legal or constructive custody of the Attorney General after his actual or physical custody had been transferred under Section 302 of the D.C.Code to entirely different officials in another Department of the Government. I cannot accept this theory. It seems to be based on the right of the Attorney General to assign prisoners to institutions "whether maintained by * * * the federal government, or otherwise" under 24 D.C.Code § 425. I would have no difficulty in agreeing that a prisoner so assigned would be chargeable with escape from the custody of the Attorney General if he escaped from such an institution. But appellant was not assigned to St. Elizabeths under this authority, nor is the indictment based upon the provisions of Section 751 applicable to such an escape.

The legal custody of the Attorney General or his agent or representative must be either physical or constructive. There is no third legal category. Since appellant when he escaped was not in the physical custody of the Attorney General or his agent or representative he did not escape from the custody of the Attorney General unless from his constructive custody, as the court recognizes. He could be said to have escaped such constructive custody under the present indictment and under the facts of this case only if his original commitment for the term of his imprisonment, under 24 D.C.Code § 425, has the effect of continuing the custody of the Attorney General regardless of the supervening transfer of physical custody from the Attorney General to another Department, under statutory authority. If the original commitment is so construed then, it seems to me, the resulting constructive custody of the Attorney General remained after appellant's escape from St. Elizabeths. He never

2. Set forth in footnote 2 of the court's opinion.

3. Set forth in footnote 3 of the court's opinion.

escaped from such a constructive custody at all. He merely escaped from confinement at St. Elizabeths, with such constructive custody of the Attorney General following him.

I see no reason in policy, or in the language used by Congress, to construe the statute otherwise than according to its ordinary meaning. So construed it does not embrace this case. The fact is appellant escaped from the custody of those in charge of him at St. Elizabeths, not from the custody of the Attorney General or an agent of the Attorney General. His confinement at St. Elizabeths under Section 302 was to continue under the provisions of that section for the duration of his mental illness. He could be returned to the Attorney General's custody to serve out his term of imprisonment, but only by authority of the Superintendent of St. Elizabeths. See 24 D.C.Code § 303(b).[4] There is this residual right of custody in the Attorney General after that of St. Elizabeths terminates, but while at that institution in the circumstances of this case the custody of the Attorney General is superseded.

Congress has not dealt with the problem of an escape by one confined in St. Elizabeths, except insofar as confinement there is by direction of the Attorney General, which is not claimed to have occurred in this case. No doubt Congress has not legislated in this particular area because those ordinarily confined in St. Elizabeths and who escape therefrom are mentally ill.

I would reverse and remand for dismissal of the indictment. Appellant is subject to confinement until the end of his original sentence of 6 to 13 years. This confinement should not be increased by the added sentence of 6 to 18 months for conduct which I believe, with respect, does not constitute a crime based on a theory of constructive custody which either has no application to the facts of this case or which precludes the escape from being an escape at all.

4. The fact that credit is given for time served at St. Elizabeths has no bearing on custody. This is prescribed by statute. See 18 U.S.C. § 4242.