In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2520

UNITED STATES OF AMERICA,

*Petitioner-Appellant,*

*v.*

PABLO S. HERNANDEZ-ARENADO,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
Nos. 3:08-cv-278 and 08-cv-291—**J. Phil Gilbert**, *Judge.*

ARGUED SEPTEMBER 12, 2008—DECIDED JULY 6, 2009

Before RIPPLE, ROVNER, and EVANS, *Circuit Judges.*

ROVNER, *Circuit Judge.* This case presents us with the question of whether a person held by the United States Immigration and Customs Enforcement ("ICE"— formerly the Immigration and Naturalization Service (INS)) who is placed in a facility run by the Bureau of Prisons ("BOP"), is in the custody of the BOP for pur- poses of the Adam Walsh Child Protection and Safety Act of 2006 (the "Act"), 18 U.S.C. § 4248 et seq., or whether he is in the custody of the ICE and therefore

does not fall within that Act. Under the Act, if he is in the custody of the BOP and is certified to be a sexually dangerous person, his release from custody is stayed and he is subject to civil commitment.

Pablo Santiago Hernandez-Arenado ("Hernandez") arrived in the United States in 1980 as part of the Mariel Boatlift. As part of that exodus, the Attorney General granted him immigration parole pursuant to 8 U.S.C. § 1182(d)(5). Approximately four years later, Hernandez-Arenado pled guilty to the sexual assault of a child less than 13 years of age. That conviction involved the sexual assault of a seven-year-old boy, and Hernandez-Arenado admitted to involvement in "several hundred" pedophilic contacts in the United States and Cuba. *Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1243 (10th Cir. 2008). He was sentenced by the New Jersey state court to 5 years' imprisonment. The INS thereafter revoked his parole, and upon his release from state prison, detained him pending deportation pursuant to 8 U.S.C. § 1231(a)(6). Section 1231(a)(6) provides for the detention of an alien who is "inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." For that detention, the INS placed Hernandez-Arenado in a facility run by the Bureau of Prisons.

The deportation was impeded, however, by the unwillingness of Cuba or any other nation to accept him. Thus, the INS was presented with the quandary of holding

Mariel detainees who could not be admitted into the United States, but could not be deported. What ensued was a detention of indefinite duration. Hernandez-Arenado remained in the Bureau of Prisons facility for more than 20 years.

Eventually, the circumstance of such Mariel detainees reached the Supreme Court in *Clark v. Martinez*, 543 U.S. 371 (2005). In *Martinez*, the Court ruled that aliens detained under 8 U.S.C. § 1231(a)(6) may only be held for a reasonable time in order to effect removal. *Id.* at 377-78.

Shortly thereafter, Hernandez-Arenado filed a petition for a writ of habeas corpus seeking his release on the grounds that his deportation was not likely in the reasonably foreseeable future. Because Hernandez-Arenado was housed in a BOP facility in Leavenworth, Kansas at the time, that petition was filed in the District of Kansas. That court granted the petition and ordered his release within 14 days. In the meantime, Hernandez-Arenado had been moved to a prison in Marion, Illinois which was also run by the BOP. After the district court granted the habeas petition, but before the release date, the acting chairperson of the BOP's Certification Review Panel certified that Hernandez-Arenado is a sexually dangerous person under 18 U.S.C. § 4247(a)(5) and thus subject to civil commitment under 18 U.S.C. § 4248 of the Adam Walsh Act. The government then filed a petition to civilly commit Hernandez-Arenado as a sexually dangerous person, which Hernandez-Arenado opposed. The district court in a thorough and well-reasoned

order held that Hernandez-Arenado was in the custody of the ICE for purposes of the Adam Walsh Act and that the ICE's decision to house him in BOP facilities did not render him in the custody of the BOP under that Act. The government now appeals that decision.

Before we address his appeal, however, we note that during the pendency of this appeal, the Tenth Circuit decided an appeal from the District of Kansas' grant of habeas relief. *Hernandez-Carrera v. Carlson*, 547 F.3d 1237 (10th Cir. 2008). The Tenth Circuit reversed that decision, and denied the grant of habeas corpus, based on the Attorney General's revised interpretation of the detention provision at 8 U.S.C. § 1231(a)(6). Under that revised interpretation, only a limited class of aliens may be detained for an extended period exceeding the ninety days, including those who pose a special danger to the public because they have committed crimes of violence and due to mental illness are likely to do so in the future, and for whom no conditions of release can be reasonably expected to ensure the safety of the public. 8 C.F.R. § 241.14. Under the new regulations, enhanced evidentiary and procedural protections also were imposed to protect the alien. 547 F.3d at 1253; 8 C.F.R. § 241.14. The Tenth Circuit concluded that the continued detention under that provision was not impermissible when so limited. 547 F.3d at 1256. We raise this only to note that the Tenth Circuit's decision does not render this appeal moot. Hernandez-Arenado's continued detention is pursuant to a provision that allows the continued detention of a person deemed to pose a special danger to the public. *Id.* at 1243. That determination is

potentially subject to review every 6 months. *Id.* at 1254. Because a court could determine at any time that release is appropriate, the applicability of the Adam Walsh Act to him is not moot because it provides an independent basis for his continued detention and could prevent that immediate release.

The relevant language in the Adam Walsh Act provides:

> (a) Institution of proceedings.—In relation to a *person who is in the custody of the Bureau of Prisons,* or who has been committed to the custody of the Attorney General pursuant to section 4241(d), or against whom all criminal charges have been dismissed solely for reasons relating to the mental condition of the person, the Attorney General or any individual authorized by the Attorney General or the Director of the Bureau of Prisons may certify that the person is a sexually dangerous person, and transmit the certificate to the clerk of the court for the district in which the person is confined. . . . The court shall order a hearing to determine whether the person is a sexually dangerous person. A certificate filed under this subsection shall stay the release of the person pending completion of procedures contained in this section.

18 U.S.C. § 4248(a) (emphasis added). The question here is whether Hernandez-Arenado was "in the custody" of the BOP for purposes of the Act.

We first must place the phrase in its context. In addition to including persons in the custody of the BOP, the Act applies to those committed to the Attorney General's custody for determination of competency to stand trial

in federal court (18 U.S.C. § 4241(d)), and those against whom all federal criminal charges have been dismissed for reasons relating to their mental condition. It therefore is limited to two categories of persons who are in the federal criminal process and thus under the authority of the Attorney General as head of the Department of Justice. The third category, those in the custody of the BOP, is consistent with those other categories if read as including those remanded to the custody of the BOP after a federal conviction. The government, however, urges that Hernandez-Arenado should be included by virtue of his lengthy stay in BOP facilities, even though his detention is under the authority of the ICE, a part of the Department of Homeland Security and therefore not under the Department of Justice.

Here, the BOP has physical custody of Hernandez-Arenado, because the ICE has utilized the BOP facility to house him during his detention. That is not an uncommon practice. According to the ICE's own website, in 2008 approximately 67% of the ICE population was detained in the over 300 local and state facilities acquired through intergovernmental service agreements, 17% were in the seven contract detention facilities, 13% were in the eight ICE-owned facilities, and 3% were housed in BOP facilities. *See* U.S. Immigration and Customs Enforcement, Detention Management, http://www.ice.gov/pi/news/factsheets/detention_mgmt.htm. The ICE ensures, through its self-described "aggressive inspections program," that the facilities used comply with ICE National Detention Standards. Nor is the practice of alternative housing limited to the ICE. The BOP is responsible for

the care and custody of persons convicted of federal crimes, yet it does not host all of those convicted persons. According to the BOP website, the BOP is currently responsible for the custody and care of more than 204,000 federal offenders, of which approximately 82% are confined in BOP facilities and the remainder reside in privately-managed or community-based facilities or local jails. *See* BOP: About the Bureau of Prisons, http://www.bop.gov/about/index.jsp. If physical custody is the touchstone, then the applicability of the Adam Walsh Act will turn on the administrative choices of the ICE or the BOP, rather than on any factors common to the group of persons subjected to the Act. It will, in a word, be random—if not outright manipulable.

The Supreme Court has recognized that the term "custody" will have different meanings in different contexts. *Rumsfeld v. Padilla*, 542 U.S. 426, 438 (2004); *see also Ramsey v. Brennan*, 878 F.2d 995, 996 (7th Cir. 1989) (noting that the word "custody" is a chameleon). For instance, 28 U.S.C. § 2242, a federal habeas statute, contemplates a proceeding against the person in immediate physical possession of the inmate, who would therefore have the power to produce that inmate if the court determined that the detention was unlawful. *Rumsfeld*, 542 U.S. at 434-35. Where the challenged action involves a confinement that would be imposed in the future, rather than a present incarceration, custody may be defined not in terms of physical control, but rather in terms of the legal control over the person. *Id.* at 438-39. In the present case, however, the statute involves a determination that could lead to future civil confinement. In that context, the

term custody would more logically invoke the one with legal authority over the detainee, rather than the entity in physical possession.

In fact, although the government relies on the physical custody to argue that Hernandez-Arenado is subject to the Act, even the government is wary of its conclusion. Despite arguing that the BOP's physical custody of Hernandez-Arenado subjected him to the Act, the government refused to apply the same standard to others in the physical custody of the BOP. In fact, the government explicitly and repeatedly refuses to take the position that physical presence at the BOP facility is the determinative factor, and instead maintains that its position is not that all persons housed in BOP facilities are in custody of BOP for purposes of the Act. The reason for this apparent inconsistency may be a pragmatic one. As the district court pointed out, under an interpretation based on physical custody alone, the categories of persons included is vast, including those housed in BOP facilities as material witnesses, under civil contempt orders, on writs of habeas corpus ad testificandum, or under contract with other sovereigns—such as state or local governments—to house sensitive prisoners.

In apparent recognition that applying the Adam Walsh Act to persons such as material witnesses or those under civil contempt orders would be difficult to defend, the government ultimately refuses to provide any test for determining custody, asserting only that a person there as long as Hernandez-Arenado is definitely in custody. At least one other appellate court has been

troubled by the government's inconsistent positions as to the definition of custody under the Act. *United States v. Comstock*, 551 F.3d 274, 281 (4th Cir. 2009). In *Comstock*, the government argued that § 4248 of the Act constituted a limited, necessary extension of the federal penal system authorized under the Article I power to enact federal statutes. *Id.* However, *Comstock* pointed out that in the present case and in *United States v. Shields*, 522 F.Supp.2d 317 (D. Mass. 2007), the government advocated a view of custody that strayed beyond that connection to federal criminal offenders. *Id.* at n.7. In *Shields*, the government argued that § 4248 requires only that a person be in the custody of the BOP, not that the custody is lawful, and in the present case, the government argues that even a person not in custody for a federal criminal offense can be included if the person is physically in a BOP facility. *Id.* Even that position is not consistent, because the government would not necessarily extend the term to include anyone in physical custody. The *Comstock* court ultimately concluded that § 4248 was unconstitutional, but that issue is not before this court. We raise it only to note the inconsistencies in the positions taken by the government in cases addressing § 4248.

We are entrusted with the duty to read the statute so as to have ascertainable meaning, and the *ad hoc* conclusory determination advocated by the government provides no guidance to courts, the ICE, the BOP, or those housed at BOP facilities, as to whether they are in the custody of the BOP for purposes of the Act. The term must be given a meaning that is capable of being applied beyond the narrow facts here, and the government is unwilling to

advocate any such articulable definition. *See Downey v. Crabtree*, 100 F.3d 662, 666 (9th Cir. 1996) (rejecting the government's argument that "nonviolent offense" should be defined at the BOP's discretion, and noting that the federal courts have ultimate responsibility of statutory interpretation). Hernandez-Arenado's detention is under the authority of the ICE, as part of the Department of Homeland Security. He is housed at BOP facilities for the convenience of the ICE, and although the BOP attends to his daily needs and may even transfer him among facilities to further its own interests, the ICE retains the ultimate authority over him. His detention is different in kind than the other two categories set forth in the Adam Walsh Act, which involved persons in the federal justice system under the authority of the Department of Justice. We reject an interpretation that would allow physical custody alone to suffice under the Adam Walsh Act. There could be no reason to provide the specificity in the other categories if the BOP category was to be read so broadly as to include those categories and more. An interpretation based on the physical locale of the person would greatly expand the Act, to ensnare even those who are at the BOP by chance, as where state prisons are overcrowded, or as a result of no criminal action on their part, as with material witnesses. Ironically, it would also exclude federal offenders from coverage, as 18% of those offenders do not reside in the physical custody of the BOP. That makes no sense. The more rational reading of the Act would read custody more narrowly as including all federal offenders, but not those housed in the BOP as a service to another

entity which is responsible for that individual's incarceration. Under that interpretation, Hernandez-Arenado does not fall within the Act, and the district court properly dismissed the proceedings. The decision of the district court is AFFIRMED.