**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────

**No. 13-6326**

─────────

UNITED STATES OF AMERICA,

     Petitioner - Appellee,

  v.

RICHARD SAVAGE,

     Respondent - Appellant.

─────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Graham C. Mullen, Senior District Judge. (5:08-hc-02182-MU-JG)

─────────

Argued: October 30, 2013    Decided: December 10, 2013

─────────

Before WILKINSON, AGEE, and KEENAN, Circuit Judges.

─────────

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Wilkinson and Judge Keenan concur.

─────────

**ARGUED**: Jeffrey William Gillette, GILLETTE LAW FIRM, PLLC, Raleigh, North Carolina, for Appellant. Michael Bredenberg, FMC BUTNER, FEDERAL MEDICAL CENTER, Butner, North Carolina, for Appellee. **ON BRIEF**: Thomas G. Walker, United States Attorney, R.A. Renfer, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

─────────

AGEE, Circuit Judge:

Richard Savage appeals from the judgment of the United States District Court for the Eastern District of North Carolina civilly committing him as a "sexually dangerous person" under 18 U.S.C. § 4248. Savage contends that the district court lacked jurisdiction under this statute because, as a District of Columbia offender, he was not "in the custody of the Bureau of Prisons" ("BOP") as required by § 4248(a). He separately argues that the district court erred in committing him because he should have been released to the District of Columbia under § 4248(d). For the reasons set forth below, we affirm the district court's judgment.

## I. Factual and Procedural Background

In 2006, Savage, who has a history of repeated sexual and nonsexual offenses, pled guilty and was convicted of distributing heroin in violation of the District of Columbia Code ("D.C. Code"). Savage served his thirty-six-month sentence for that offense in the BOP facility in Butner, North Carolina. Before his scheduled release date for that offense, the Government timely certified Savage as a "sexually dangerous person" under § 4248(a) on December 18, 2008. The next day, the district court stayed the civil commitment proceedings, noting that had been the consistent practice in other § 4248

2

proceedings brought while appeals were pending in United States v. Comstock, 507 F. Supp. 2d 522 (E.D.N.C. 2007), aff'd, 551 F.3d 274 (4th Cir. 2009), and rev'd and remanded, 560 U.S. 126 (2010), on remand, rev'd and remanded, 627 F.3d 513 (4th Cir. 2010).

Unaware of the pending civil commitment proceedings in April 2010, the District of Columbia Court Services and Offender Supervision Agency ("CSOSA") inquired as to Savage's anticipated release into the District of Columbia upon the completion of his criminal sentence. When CSOSA contacted the BOP regarding Savage's status, the BOP explained that Savage had been civilly committed as a sexually dangerous person and therefore would not be released.[1] After communicating with the BOP, CSOSA closed Savage's case.

Once the stay of proceedings related to Comstock was lifted, Savage moved to dismiss the § 4248 proceedings against him and sought immediate release. He argued that the district court lacked jurisdiction over him because, as a District of Columbia offender, he was not "in the custody" of the BOP for purposes of § 4248. Citing our decision in United States v. Joshua, 607 F.3d 379 (4th Cir. 2010), Savage argued that the D.C. Code, like the Uniform Code of Military Justice ("UCMJ") in

---

[1] In fact, Savage had not yet been civilly committed but rather was in the initial stages of that process.

3

Joshua, is a separate body of law from Title 18 of the U.S. Code. Consequently, Savage posited that the BOP maintained only physical custody over him, not the legal custody required by § 4248 to adjudicate a civil commitment. The district court denied the motion, concluding that "[t]he statutory framework of both the D.C. Code and the federal code endows the [BOP] with the legal custody, not merely physical custody, over D.C. Code offenders." United States v. Savage, No. 5:08-HC-2182-FL, 2011 U.S. Dist. LEXIS 112959, at *4 (E.D.N.C. Sept. 30, 2011).

At the subsequent commitment hearing, the Government presented evidence detailing Savage's history of sexual offenses. The district court concluded that Savage satisfied the § 4248 criteria and ordered him to be civilly committed as a sexually dangerous person.[2] Savage noted a timely appeal, and we have jurisdiction pursuant 28 U.S.C. § 1291.

## II. Analysis

The Adam Walsh Child Protection and Safety Act, codified at 18 U.S.C. § 4248, authorizes the civil commitment of "sexually dangerous person[s]." In pertinent part, § 4248 provides that "[i]n relation to a person who is in the custody of the Bureau

---

[2] Savage does not challenge the district court's findings that he satisfied the non-jurisdictional criteria for commitment under § 4248.

4

of Prisons, . . . the Attorney General . . . may certify that the person is a sexually dangerous person. . . . The court shall order a hearing to determine whether the person is a sexually dangerous person." 18 U.S.C. § 4248(a) (emphasis added).[3] The statute further provides that

> [i]f, after the hearing, the court finds by clear and convincing evidence that the person is a sexually dangerous person, the court shall commit the person to the custody of the Attorney General. The Attorney General shall release the person to the appropriate official of the State in which the person is domiciled or was tried if such State will assume responsibility for his custody, care, and treatment.

Id. § 4248(d) (emphasis added).

In this appeal, Savage raises two issues. First, he argues that the district court erred in concluding that, for purposes of § 4248(a), Savage was "in the custody of" the BOP. Second, Savage contends that the district court erred in committing him because § 4248(d) instead required him to be released to the District of Columbia. Both issues are questions of statutory interpretation—"quintessential question[s] of law, which we

---

[3]    Section 4248(a) also authorizes the Attorney General to certify as a "sexually dangerous person" anyone "who has been committed to the custody of the Attorney General pursuant to section 4241(d), or against whom all criminal charges have been dismissed solely for reasons relating to the mental condition of the person." 18 U.S.C. § 4248(a). The BOP does not argue that Savage falls into either of these categories. We agree those provisions do not apply in this case and consider only whether Savage was "in the custody of the Bureau of Prisons."

review de novo." Stephens ex rel. R.E. v. Astrue, 565 F.3d 131, 137 (4th Cir. 2009).

## A.

We consider first Savage's argument that the court lacked the jurisdiction under § 4248 to civilly commit him because he was not "in the custody of the [BOP]." In essence, Savage contends that, as a District of Columbia offender, he was not "in the custody" of the BOP for purposes of § 4248 even though he was serving his term of confinement in the BOP.

Savage proposes three basic reasons to support this conclusion. First, he argues that, having been convicted under the D.C. Code, he is not subject to § 4248 because that statute applies only to individuals in the federal criminal process. Second, Savage contends that the Attorney General and the BOP are not the same authority for purposes of determining "custody," and that the D.C. Code transfers convicted offenders into the custody of the Attorney General following their sentencing. Third, and finally, he argues that any control that the BOP exercises over D.C. prisoners is not "custody" as contemplated by § 4248. For these reasons, Savage posits that his case is "virtually indistinguishable" from Joshua and he, too, should not be subject to commitment under § 4248 because the district court lacked the jurisdiction to do so.

6

Before addressing these arguments, we first summarize our holding in Joshua, where we also addressed the meaning of "custody" in the context of § 4248. In that case, an ex-Army officer had been convicted by courts-martial of violations of the UCMJ and was serving his term of imprisonment in a BOP facility under a "Memorandum of Agreement" entered into under the statutory authority of UCMJ Article 58. Joshua, 607 F.3d at 381–82. The Memorandum of Agreement stated that the BOP would house up to 500 U.S. Army prisoners, who were deemed "contractual boarders." Id. at 381. By its terms, the Memorandum of Agreement provided that "military prisoners within BOP facilities [would] remain 'in permanent custody of the U.S. Army,' which 'retain[ed] clemency authority.'" Id. at 382 (quoting the Memorandum Agreement). This contractual custody was statutorily authorized only as to a prisoner's "confinement," not his legal status for § 4248 purposes: "UCMJ Article 58's language authorizing Joshua's 'confinement' within a BOP facility never transferred legal custody away from the Army." Id. at 389.

We determined in Joshua that the term "custody" in § 4248(a) means not simply physical custody, but legal custody—the "ultimate legal authority" over the offender. Id. at 388. And we held that the provisions of the UCMJ, reflected in the terms of the Memorandum of Agreement, established that the BOP

7

did not have legal, but only physical, custody over Joshua. The ultimate legal authority over him always remained with the Army regardless of Joshua's place of physical residence. Id. at 388-90. Because the BOP lacked legal custody over Joshua, there was no jurisdictional authority for civil commitment under § 4248, and we affirmed the district court's dismissal of the Government's § 4248 petition. Id. at 391.

We find the case at bar distinguishable from Joshua. Unlike Joshua, this case involves the civilian District of Columbia criminal justice system, not the military system. More to the point, District of Columbia offenders, unlike military offenders, are placed in the BOP's custody by statutory authority, not as a matter of convenience. Section 24-201.26 of the D.C. Code provides that "[a]ll prisoners convicted in the District of Columbia for any offense . . . shall be committed . . . to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinements where the sentences of all such persons shall be served." D.C. Code § 24-201.26 (emphasis added). The D.C. Code refers to "custody" as opposed to mere "confinement," the operative statutory language at issue in Joshua. See Joshua, 607 F.3d at 389 ("By contrast, Article 58's provision authorizing a military offender's confinement within the BOP looks much different: 'a sentence of confinement adjudged by a

8

court-marital or other military tribunal . . . may be carried into execution by confinement in . . . any penal or correctional institution under the control of the United States . . . .'" (quoting 10 U.S.C. §858(a))). While "confinement" suggests mere physical custody, "committed to the custody," by comparison, reflects a specific status beyond the place of residence. Similarly, while D.C. Code § 24-201.26 expressly transfers "custody," the Memorandum of Agreement in Joshua expressly provided that the U.S. Army retained "custody" of him.

In determining what type of "custody" D.C. Code § 24-201.26 intends, we find Frazier v. United States, 339 F.2d 745 (D.C. Cir. 1964), persuasive.[4] In Frazier, the United States Court of Appeals for the District of Columbia Circuit determined from the identical language in the predecessor statute of Section 24-201.26 that "it is clear that the 'custody' intended is not limited to actual physical custody, but denotes a type of legal custody which remains in the Attorney General even though the prisoner is assigned to an institution over which the Department

---

[4] We further note that because Frazier pre-dates the creation of the District of Columbia Court of Appeals, it would ordinarily be afforded the deference due a "state" court interpreting a "state" statute. See Ortberg v. Goldman Sachs Group, 64 A.3d 158, 170 n.2 (D.C. 2013) ("Decisions of the United States Court of Appeals for the District of Columbia Circuit issued before February 1, 1971, are binding on this court."). As noted, however, Frazier examined the predecessor statute of § 24-201.26, though that language was the same. As such, its interpretation is highly persuasive.

9

of Justice has no control." Id. at 746. The appellant, Frazier, had argued that he was not subject to the Federal Escape Act, 18 U.S.C. § 751, because he had been transferred to a mental facility prior to his escape, and the Attorney General's custody had ended upon that transfer. Frazier, 339 F.2d at 746–47. The court, however, concluded that "the custody of the Attorney General is continuous as he discharges his responsibility to transfer a prisoner 'from one institution to another . . . for the well-being of the prisoner.'" Id. at 747 (citation omitted).

Congress' enactment of the National Capital Revitalization and Self Government Improvement Act of 1997, 111 Stat. 251; Pub. L. 105-33, (the "Revitalization Act") confirms to us that D.C. Code § 24-201.26 places D.C. offenders into the legal custody of the Attorney General for the duration of his sentence, no matter where the prisoner may be housed. The Revitalization Act effectively closed the District of Columbia Department of Corrections and "transferred [all D.C. felons] to a penal or correctional facility operated or contracted for by the Bureau of Prisons." D.C. Code § 24-101(b). Not only did the Revitalization Act place D.C. offenders in the physical custody of the BOP, but by further "subject[ing] [D.C. offenders] to any law or regulation applicable to persons committed for violations of laws of the United States consistent with the sentence imposed, and [by designating] the Bureau of Prisons . . .

10

responsible for the custody, care, subsistence, education, treatment and training of such persons," the Act also vested legal custody in the BOP. Id. (emphasis added); see also, e.g., Chase v. Pub. Defender Serv., 956 A.2d 67, 72 & n.7 (D.C. 2008) (explaining that "[w]hen it enacted the Revitalization Act in 1997, Congress shifted control over several criminal justice functions from the District of Columbia to the federal government," including the "transfer[] [of] sentenced felons to the custody of the federal Bureau of Prisons"). The Revitalization Act was, by its plain terms, not a contractual provision for confinement, but the full vesting of all aspects of custody in the BOP over D.C. offenders.

Contrary to Savage's contention, we conclude that for purposes of § 4248, there is no substantive difference between vesting legal custody in the Attorney General and legal custody in the BOP. D.C. Code § 24-201.26 transfers custody to "the Attorney General of the United States or his authorized representative, who shall designate the places of confinements where the sentences of all such persons shall be served." D.C. Code § 24-201.26 (emphasis added). Moreover, Congress has provided that "[t]he Bureau of Prisons shall be in [the] charge of a director appointed by and serving directly under the Attorney General." 18 U.S.C. § 4041 (emphasis added); see also id. § 4042 (stating that "[t]he Bureau of Prisons, under the

11

direction of the Attorney General, shall" perform its duties). Under these clearly delineated relationships, the BOP operates at the Attorney General's direction, and serves as that officer's designee. The Attorney General and the BOP are thus equivalent entities for purposes of a § 4248 "custody" analysis.

Since the passage of the Revitalization Act, the BOP calculates D.C. offenders' sentences and determines their release dates. Savage himself acknowledges that this calculation is "[t]he most obvious expression of ultimate legal authority over a prisoner." (Opening Br. 21.) And while the BOP sentencing manual for D.C. offenders is separate from that for federal offenders, the BOP compiled the D.C. offender's manual in light of the Revitalization Act's instructions in order to fulfill this component of its exercise of full custody over D.C. offenders. See generally Federal Bureau of Prisons, 5880.32 Change Notice 1 (2003), http://www.bop.gov/policy/progstat/5880_032_CN01.pdf. The BOP, by creating and implementing the manual, is significantly more active in the process than Savage portrays it to be. Because the BOP is responsible under the Revitalization Act for the calculation of sentences and the "custody, care, subsistence, education, treatment and training of" D.C. offenders, it is

clear that the BOP, as the Attorney General's representative, exercises "ultimate legal authority" over D.C. offenders.[5]

For all the foregoing reasons, we hold that D.C. offenders are in the legal custody of the BOP for purposes of § 4248. As such, we conclude that the district court did not err in determining that it had the jurisdictional authority to civilly commit Savage as a "sexually dangerous person" under § 4248(a) because he was in the legal custody of the BOP.

B.

Savage also argues that the district court erred in his civil commitment because § 4248(d) instead required his release "to the appropriate State . . . if that State will assume responsibility for his custody, care, and treatment." 18 U.S.C. § 4248(d). Specifically, he contends that, as the District of Columbia had expressed a willingness when CSOSA contacted the BOP to coordinate his release plan, § 4248(d) required that he

---

[5] Similarly, D.C. offenders are also not in the same category as the detainee of the U.S. Immigration and Customs Enforcement ("ICE") in United States v. Hernandez-Arenado, 571 F.3d 662 (7th Cir. 2009), who was housed in a BOP facility and whose custodial status for purposes of § 4248 was at issue. ICE, as part of the Department of Homeland Security, housed Hernandez-Arenado in a BOP facility for its convenience, but "retain[ed] ultimate authority over him." Id. at 667. Thus, as in Joshua, there was no statutory transfer of legal custody of Hernandez-Arenado from ICE to the BOP.

13

be released to the District of Columbia. (Opening Br. 23–26.) Savage, however, never made this argument in the district court.

"[I]ssues raised for the first time on appeal are generally not considered absent exceptional circumstances." Williams v. Prof'l Transp. Inc., 294 F.3d 607, 614 (4th Cir. 2002). The underlying rationales for this rule are "respect for the lower court, [avoiding] unfair surprise to the other party, and the need for finality in litigation and conservation of judicial resources." Wheatley v. Wicomico Cnty., 390 F.3d 328, 335 (4th Cir. 2004). Savage contends that he preserved this argument for appeal on two occasions. We disagree.

First, Savage points to a section of his Memorandum in Support of his Motion to Dismiss and Release, in which he argues that "[a]pplication of 18 U.S.C. § 4248 to Respondent Savage merely because of his physical presence in a BOP facility is inconsistent and interferes with the District of Columbia's ability to manage his reentry or ongoing confinement pursuant to the D.C. Code." (J.A. 41.) This statement, however, is not an argument based on any statutory release mandate under § 4248(d). Savage never referred to subsection (d) in this part of his memorandum but asserted only a vague equitable argument that the District of Columbia was better able to manage his reentry. This contention is not an argument that the statute prohibited his

14

commitment under § 4248(d) as a matter of law, as he now contends on appeal.

Second, Savage points to his closing argument during the commitment hearing. (J.A. 297–303.) While Savage did reference subsection (d) once, he again made only an equitable argument that it was more appropriate for the District of Columbia to treat him. He never argued that the court lacked the authority to commit him under § 4248(d) because of a statutory requirement that he be instead released to the District of Columbia. (Id. at 297.) This is a different argument from the one that Savage presents on appeal: that he should not have been committed under § 4248 because subsection (d) required his release to the District of Columbia under the express terms of the statute.

Savage has not argued that exceptional circumstances exist that would compel us to consider an argument raised for the first time in this appeal, and we find none. Therefore, we conclude that Savage has waived his second argument by failing to raise it in the district court.[6]

---

[6] Even if Savage had not waived this argument, and even assuming arguendo that he could prove CSOSA's willingness to assume responsibility for his care, Savage's argument would still fail. Savage bases his argument on a misreading of § 4248(d), which provides that

> [i]f, after the hearing, the court finds by clear and convincing evidence that the person is a sexually dangerous person, the court shall commit the person to

(Continued)

15

### III. Conclusion

For the reasons stated above, we conclude that Savage, as a D.C. offender, was "in the custody of" the BOP for purposes of § 4248 certification as a "sexually dangerous person." We further conclude that Savage waived the argument that § 4248(d) required his release to the District of Columbia. We therefore affirm the district court's judgment.

AFFIRMED

------

the custody of the Attorney General. The Attorney General shall release the person to the appropriate official of the State in which the person is domiciled or was tried if such State will assume responsibility for his custody, care, and treatment.

18 U.S.C. § 4248(d) (emphasis added). We do not address whether CSOSA "will assume responsibility for [Savage's] custody, care, and treatment." But even by the plain language of the statute, the § 4248(d) provision for release to state officials applies only after the district court has found at a § 4248 hearing that the individual is a "sexually dangerous person." Therefore, § 4248(d) applies only after the § 4248 hearing and commitment determination. Savage remains free to seek that course as it relates to his future commitment, but § 4248(d) did not operate to bar the § 4248 commitment process.