**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-6742**

UNITED STATES OF AMERICA,

Petitioner – Appellee,

v.

JOHNNY LEE WILLIAMS,

Respondent – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. James C. Dever III, District Judge. (5:11-hc-02204-D)

Submitted: September 24, 2021                    Decided: November 2, 2021

Before FLOYD, THACKER, and HARRIS, Circuit Judges.

Affirmed by unpublished opinion. Judge Harris wrote the opinion, in which Judge Floyd and Judge Thacker joined.

G. Alan DuBois, Federal Public Defender, Jaclyn L. Tarlton, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Robert J. Higdon, Jr., United States Attorney, Michael G. James, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Johnny Lee Williams appeals from an order of the district court modifying the terms of his discharge from civil commitment. After Williams and the government agreed to a set of conditions allowing for his safe release, the probation department responsible for supervising Williams requested two changes to those conditions. The district court granted one modification, involving home detention and GPS monitoring, over Williams's opposition. On appeal, Williams challenges that decision, mainly on the ground that the district court lacked statutory authority to impose the modified conditions. But Williams did not raise that argument to the district court, and we will not address it in the first instance. Finding that the district court did not otherwise abuse its discretion, we affirm.

## I.

In 2011, as Williams neared the end of a 210-month federal sentence for a firearms offense, the government certified him to be a "sexually dangerous person" under the Adam Walsh Child Protection and Safety Act of 2006, which provides for the civil commitment of such persons in the custody of the Bureau of Prisons. 18 U.S.C. § 4248; *see id.* § 4247(a)(5) (defining "sexually dangerous person" as one who has "engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others"). In support, it cited Williams's multiple prior convictions for violent sex offenses, many of which involved minors, spanning decades before his last arrest. After a hearing, the district court agreed with the government and ordered Williams committed.

2

Years later, Williams moved for a hearing to determine whether he should be discharged because he was "no longer sexually dangerous to others" or would "not be sexually dangerous to others if released under a prescribed regimen of medical, psychiatric, or psychological care or treatment." J.A. 56 (quoting 18 U.S.C. § 4248(d)(2)); *see* 18 U.S.C. § 4247(h). Soon after, he and the government reached a settlement, reporting to the district court that Williams "will not be sexually dangerous to others if released under a prescribed regimen of medical, psychiatric, or psychological care o[r] treatment." J.A. 62. The parties jointly proposed a consent order that would discharge Williams from commitment subject to 39 conditions of release. Those conditions included that Williams would be supervised by the U.S. Probation Office for the Southern District of Texas ("Probation"), subject to that district's standard conditions of supervised release and "any other conditions adopted by Probation," J.A. 67; live in a residential reentry center for at least six months; and "[b]e monitored with location monitoring using Global Positioning System ('GPS'), for at least six (6) months," J.A. 71. The parties also agreed that "Probation may seek modification of these conditions." J.A. 76. In March 2020, after a hearing, the district court approved and entered the consent order exactly as the parties had proposed it.

3

This appeal arises from Probation's request, about a month later, to modify the consent order. As relevant here,[*] Probation reported that GPS monitoring was not feasible in the reentry center where Williams planned to live after his release. As a result, Probation asked to amend the consent order to require GPS monitoring only "[u]pon completion" of Williams's residence in that facility, and "until released by court order." J.A. 102. Further, Probation requested that Williams be placed on home detention (subject to several exceptions) during the monitoring period.

Williams opposed this request, though only in part. Acknowledging that "GPS monitoring [was] not compatible with the halfway house in Texas" and that "a period of GPS monitoring after his exit from the halfway house may be part of a step-down process," he "[did] not oppose GPS monitoring for a period of 90 days after completion of the halfway house placement." *Id.* But he objected to "indefinite GPS monitoring" and "the home detention provision entirely" as "serious" and unnecessary "curtailments of [his] liberty." J.A. 102–03. The government responded, arguing that Probation's request was based on Williams's "criminal history, the instability of his community resources and his unknown level of progress," J.A. 106 (internal quotation marks omitted), all of which, it argued, counseled against any "artificial deadline" for the release terms Probation had requested, J.A. 107.

---

[*] One of Probation's requests – to which Williams did not object before the district court and which he does not challenge on appeal – clarified that Williams was to reside in a residential reentry center for the six months immediately after his discharge from commitment.

In April 2020, the district court granted Probation's requests. It explained that, despite its prior approval of the consent order, Williams's "criminal history and background [we]re nevertheless import[ant] considerations in fashioning appropriate release conditions." J.A. 113. Because Probation sought these changes to "monitor and supervise [Williams] . . . effectively," the district court found them "reasonable" for the reasons Probation had given and modified the consent order as requested. J.A. 113–14.

Williams timely appealed the district court's decision.

## II.

On appeal, Williams's first and primary argument is that the district court's imposition of indefinite home detention and GPS monitoring was improper because those conditions were not part of a "prescribed regimen of medical, psychiatric, or psychological care or treatment," as he claims § 4248 requires. *See* 18 U.S.C. § 4248(e)(2) (providing for discharge from commitment upon a finding that a person "will not be sexually dangerous to others if released under a prescribed regimen of medical, psychiatric, or psychological care or treatment"). As a result, Williams argues, the district court lacked statutory authority to impose those conditions on his discharge. But Williams did not make this argument to the district court. And his litigation conduct before the district court conflicts with this new argument as he has presented it to us. Accordingly, we reject this argument as waived.

"[I]ssues raised for the first time on appeal are generally not considered absent exceptional circumstances." *United States v. Savage*, 737 F.3d 304, 310 (4th Cir. 2013)

5

(internal quotation marks omitted). We have recently applied this principle to similar facts, where an appellant argued, also under § 4248, that the district court erred in "failing to explain 'why it imposed' the conditions it did and 'how they are part of a prescribed regimen' of care or treatment." *United States v. Shea*, 989 F.3d 271, 281 (4th Cir. 2021). There, "Shea never argued . . . to the district court that the conditions – in part or in whole – were not appropriate aspects of a prescribed regimen." *Id.* And "[m]ore remarkably, during the proceedings before the district court, Shea *actually proposed imposition of the conditions*" at issue as an alternative argument. *Id.* As a result, we held, Shea had waived his challenge to the conditions the district court had imposed. *Id.* at 282.

So too here. Before the district court, Williams did not argue that § 4248 precluded terms of release beyond a "prescribed regimen of medical, psychiatric, or psychological care or treatment." And that is no surprise, given that the original, jointly proposed consent order under which Williams was discharged itself included multiple conditions with no obvious connection to a regimen of "care or treatment." *See, e.g.*, J.A. 67, 90 (requiring compliance with the Southern District of Texas's "standard conditions of supervision, [and] any other conditions adopted by Probation"); *id.* at 71, 94 (imposing a nightly curfew); *id.* at 72, 95 (requiring Williams to submit a driving log and detailed financial information to Probation). Indeed, the original consent order included the very term of indefinite GPS monitoring that Williams now contends is outside the district court's authority. *See* J.A. 71, 94 (requiring GPS monitoring "for *at least* six (6) months" (emphasis added)).

6

Williams's waiver persisted even through his opposition to the modifications now at issue: There, Williams proposed, as an alternative to rejecting Probation's request altogether, the imposition of GPS monitoring for 90 days – a condition, like those cited above, that his appellate theory would likely preclude as beyond a prescribed treatment regimen. In sum, having secured release by persuading the government and district court that the terms of the consent order would protect the public, Williams cannot now upend that agreement to avoid modifications that the order expressly permits – much less with an argument that he failed to make to the district court. "If this is not invited error, . . . it certainly constitutes a waiver." *Shea*, 989 F.3d at 282. Accordingly, we reject, as waived, Williams's argument that the district court lacked authority to impose the challenged conditions.

Williams also briefly argues that even if the district court had authority to impose the modified GPS and home-confinement conditions, it abused its discretion in doing so given Williams's advanced age, health conditions, and other factors. We disagree. The consent order expressly permits modifications, consistent with the governing statute. *See* 18 U.S.C. § 4248(e) (allowing modifications to "regimen of medical, psychiatric, or psychological care or treatment"). And the district court explained why it viewed the modifications at issue to be appropriate. Williams contends that, in citing his "criminal history and background," J.A. 113, the district court improperly relied on "speculation and decades-old conduct," Appellant's Br. at 19. But as we have explained, "[w]hen the question is whether an inmate . . . will have serious difficulty refraining from re-offending if released, consideration of the nature of his prior crimes provides a critical part of the

7

answer." *United States v. Wooden*, 693 F.3d 440, 458 (4th Cir. 2002). Williams has not shown that any of the other factors he now emphasizes – none of which he raised before the district court – must outweigh that "critical" consideration or others cited by the district court. As a result, the district court did not abuse its discretion in modifying the consent order as it did.

**III.**

For the foregoing reasons, we affirm the decision of the district court.

*AFFIRMED*